1  STUART F. DELERY
   Acting Attorney General
2  ANDRÉ BIROTTE JR.
   United States Attorney
3  LEON W. WEIDMAN, AUSA
   Chief, Civil Division
4  WENDY WEISS, AUSA
   Chief, Civil Fraud Section
5  SUSAN R. HERSHMAN, AUSA
   Deputy Chief, Civil Fraud Section
6  California State Bar No. 083621
   LINDA A. KONTOS, AUSA
7  Office of the United States Attorney
        Room 7516, Federal Building
8       300 North Los Angeles Street
        Los Angeles, California  90012
9       Telephone: (213) 894-5709; Facsimile: (213) 894-2380
        Email: Susan.Hershman@usdoj.gov
10 JOYCE R. BRANDA
   JAMIE ANN YAVELBERG
11 RICHARD S. NICHOLSON
   Attorneys, Civil Division
12 United States Department of Justice
        P.O. Box 261, Ben Franklin Station
13      Washington, D.C. 20044
        Telephone:  (202) 616-0345; Facsimile:  (202) 305-7404
14      Email: Richard.Nicholson@usdoj.gov
   Attorneys for the United States of America
15
                    UNITED STATES DISTRICT COURT
16
                  CENTRAL DISTRICT OF CALIFORNIA
17
                         EASTERN DIVISION
18
   The UNITED STATES, the DISTRICT OF   )Case No. EDCV 09-0023-MJG
19 COLUMBIA, the states of              ) (OPx)
   CALIFORNIA, DELAWARE, FLORIDA,       ) [Originally Case No. EDCV 09-
20 GEORGIA, HAWAII, ILLINOIS,           )0023 SGL(OPx)]
   INDIANA, LOUISIANA, MASSACHUSETTS,   )
21 MICHIGAN, MONTANA, NEVADA, NEW       )**UNITED STATES'** *AMICUS CURIAE*
   HAMPSHIRE, NEW JERSEY, NEW MEXICO,   )**BRIEF IN RESPONSE TO**
22 NEW YORK, OKLAHOMA, RHODE ISLAND,    )**DEFENDANTS' MOTION TO DISMISS**
   TENNESSEE, TEXAS, VIRGINIA, and      )**FALSE CLAIMS ACT** *QUI*
23 WISCONSIN, *ex rel.* AMPHASTAR       )*TAM* **COMPLAINT**
   PHARMACEUTICALS, INC.,               )
24                                      )**Date:**        April 20, 2012
              Plaintiffs/Relator,       )**Time:**       ___:_0__.m.
25                                      )**Place:**      Greenbelt, MD
        v.                              )               Courthouse,
26                                      )               Courtroom of the
   AVENTIS PHARMA S.A., AVENTIS         )               Honorable Marvin J.
27 PHARMACEUTICALS, INC., SANOFI-       )               Garbis
   AVENTIS S.A., and DOES 1-10,         )
28                                      )
              Defendants.               )
   _____     )

# TABLE OF CONTENTS

PAGE

I.    THE GOVERNMENT'S INTEREST IN THIS CASE . . . . . . . .   1

II.   THE FCA BROADLY APPLIES TO KNOWINGLY FALSE STATEMENTS
      AND FRAUDULENT COURSES OF CONDUCT RESULTING IN
      FALSE CLAIMS TO THE GOVERNMENT.. . . . . . . . . . . .   2

III.  KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES
      OF CONDUCT THAT RESULT IN ARTIFICIALLY INFLATED
      CLAIMS TO THE GOVERNMENT CAN VIOLATE THE FCA. . . . . .   5

IV.   ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE TO THE UNITED
      STATES. . . . . . . . . . . . . . . . . . . . . . . .   9

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . .  10

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

PAGES

Cook County, Illinois v. United States ex rel. Chandler,
    538 U.S. 119 (2003) ............................... 3,6

Harrison v. Westinghouse Savannah River Company,
    176 F.3d 776 (4th Cir. 1999) ......................... 2

United States ex rel. Main v. Oakland City University,
    426 F.3d 914 (7th Cir. 2005) ......................... 7

Massachusetts v. Mylan Laboratories,
    608 F. Supp. 2d 127 (D. Mass. 2008) .................. 6

Mikes v. Straus,
    274 F.3d 687 (2d Cir. 2001) .......................... 8

Murray & Sorenson v. U.S.,
    207 F.2d 119 (1st Cir. 1953) ......................... 6

United States ex rel. Frascella v. Oracle Corp.,
751 F. Supp. 2d 842 (E.D. Va. 2010) ................... 6

United States ex rel. Hutcheson v. Blackstone Medical, Inc.,
    647 F.3d 377 (1st Cir. 2011) ...................... 3, 4

United States ex rel. Marcus v. Hess,
    317 U.S. 537 (1943) ........................... 6, 7, 8

United States ex rel. Miller v. Bill Harbert Intern.
Const., Inc.,
    786 F. Supp. 2d 110 (D. D.C. 2011) ................... 7

 United States ex rel. Ven-A-Care v. Actavis Mid
 Atlantic LLC, 659 F. Supp. 2d 262 (D.Mass. 2009) ....... 6

United States ex rel. Williams v. Bell Helicopter
Textron Inc.,
    417 F.3d 450 (5th Cir. 2005) ......................... 9

United States v. Chapman University, et al.,
    2006 WL 1562231 (C.D.Cal.) ........................... 8

United States v. General Dynamics Corp.,
19 F.3d 770 (2nd Cir. 2004) ....................... 6, 8

United States v. Hendow v. University of Phoenix,
    461 F.3d 1166 (9th Cir. 2006) ................... passim

United States v. Neifert-White Co.,
    390 U.S. 228, 232, 233 ............................. 2,3

ii

_United States v. Rachel_,
   289 F. Supp. 2d 688 (D. Md. 2003) ...................... 6


**FEDERAL STATUTES**

31 U.S.C. § 3729 ................................... 1,7

31 U.S.C. § 3730 ................................... 9

31 U.S.C. § 3730 _et seq_ ............................. 1

Fed.R.Civ.P. 9(b) ................................. 10

1          Pursuant to the Court's February 16, 2012 Order in the

2    above-captioned action, the United States of America ("the

3    government") respectfully submits this *amicus curiae* brief in

4    response to the Motion to Dismiss False Claims Act *Qui*

5    *Tam* Complaint ("Motion to Dismiss" and "Motion"), filed by

6    defendants Aventis Pharma S.A., Aventis Pharmaceuticals, Inc.,

7    and Sanofi-Aventis S.A. (collectively, "Aventis" and "defendant")

8    on January 19, 2012.  This brief does not take a position on the

9    merits of Aventis's Motion or the merits of the *qui tam*

10   plaintiff's action.  Rather, this brief addresses certain

11   arguments made by Aventis in the Motion regarding the proper

12   elements of a case under the federal False Claims Act (31 U.S.C.

13   § 3729 *et seq*. ("FCA")) that the government believes are

14   incorrect or require clarification.

15   I.   THE GOVERNMENT'S INTEREST IN THIS CASE

16        On January 7, 2009, the relator, Amphastar Pharmaceuticals,

17   Inc. ("Amphastar"), filed this action pursuant to the *qui tam*

18   provisions of the FCA, 31 U.S.C. § 3730 *et seq*.  On October 21,

19   2011, the government gave notice that it was not intervening in

20   the action.  Nonetheless, because any rulings in this case could

21   affect the government's ability to bring future FCA cases, the

22   government has a continuing interest in this matter.  The FCA is

23   the government's principal tool for fighting fraud in government

24   programs, and the government is thus concerned that the FCA be

25   interpreted in a manner consistent with its language and

26   purposes.

27        While Aventis generally acknowledges the properly broad

28   reach of the FCA, at several points in its Motion, Aventis

1   attempts to argue, incorrectly, that the relator's claims must

2   fit into certain tightly defined constructs, such as "false

3   certification," or that the relator must establish a viable

4   antitrust claim, in order to assert a viable FCA claim.   The

5   government submits this *amicus curiae* brief to assist the Court

6   in properly framing the substantive FCA standards to which the

7   relator's complaint should be held on Aventis's Motion to

8   Dismiss.   The government also requests that, if the Court

9   dismisses Amphastar's complaint on pleading or jurisdictional

10  grounds, then such dismissal should be without prejudice to the

11  United States.

12  II.   THE FCA BROADLY APPLIES TO KNOWINGLY FALSE STATEMENTS AND

13        FRAUDULENT COURSES OF CONDUCT RESULTING IN FALSE CLAIMS TO

14        THE GOVERNMENT.

15        The FCA "reaches beyond 'claims' which might be legally

16  enforced, to all fraudulent attempts to cause the Government to

17  pay out sums of money."   United States v. Neifert-White Co., 390

18  U.S. 228, 233.   In enacting the FCA, "Congress wrote expansively,

19  meaning 'to reach all types of fraud, without qualification, that

20  might result in financial loss to the Government.'"   Cook County,

21  Illinois v. United States ex rel. Chandler, 538 U.S. 119, 129

22  (2003) (quoting Neifert-White, supra, 390 U.S. at 233).   See

23  also, United States v. Hendow v. University of Phoenix, 461 F.3d

24  1166, 1174 (9th Cir. 2006); Harrison v. Westinghouse Savannah

25  River Company, 176 F.3d 776, 783 (4th Cir. 1999) ("any time a

26  false statement is made in a transaction involving a call on the

27  U.S. fisc, False Claims Act liability may attach").

28        In asserting that the allegations of Amphastar's complaint

2

do not adequately plead "falsity," Aventis argues that they must
fall into certain narrow categories – for example, that Amphastar
must plead "false certification" of compliance with a statute,
rule, or regulation that conditions government payment on
compliance.  Aventis Memo at 24-28.  Aventis also argues
throughout that Amphastar must plead claims under the federal
antitrust laws, and also, "false certification" of compliance
with such laws, to maintain its FCA claims.  Aventis Memo at 13-
23.

    Such arguments seek to create an unduly restrictive view of
the FCA, and are at odds with the broad reach of the statute and
the case law relevant to Aventis's alleged misconduct.   The
Supreme Court has stated that:

> [i]n the various contexts in which questions of the
> proper construction of the Act have been presented, the
> Court has consistently refused to accept a rigid,
> restrictive reading, even at the time when the statute
> imposed criminal sanctions as well as civil.

Neifert-White, 390 U.S. at 232.  As a result, in analyzing
conduct challenged under the FCA, it is not necessary to
categorize such conduct rigidly within the particular legal
constructs upon which Aventis insists.

    This point was recently underscored in United States ex rel.
Hutcheson v. Blackstone Medical, Inc., 647 F.3d 377 (1st Cir.
2011), where the First Circuit similarly rejected the contention
that a claim could be found false only under a certification
theory of liability.  In that case, the relator alleged that the
defendant had engaged in a kickback scheme to induce physicians

3

1 to use the defendant's medical devices in spinal surgeries, for
2 which false claims were made to the government.  Id. at 378.  The
3 lower court dismissed the relator's claims, employing concepts
4 such as "express certification" versus "implied certification,"
5 and "factual falsity" versus "legal falsity," among others.

6      The First Circuit, in reversing the lower court, declined to
7 adopt "any categorical rules as to what counts as a materially
8 false or fraudulent claim under the FCA."  Id. at 380.  The
9 various court-created categories of FCA conduct, the Court noted,
10 "may do more to obscure than clarify the issues" in an FCA
11 action.  Id. at 385-86.  The Court observed that:

12           In the context of the FCA's lengthy history, which dates
13           back to its enactment during the Civil War, . . .  these
14           judicially created formal categories are of relatively
15           recent vintage.  They have not been adopted by the Supreme
16           Court or this court.

17 Id. at 385.  The Court further explained:

18           Judicially-created categories sometimes can help carry out a
19           statute's requirements, but they can also create artificial
20           barriers that obscure and distort those requirements.  The
21           text of the FCA does not refer to "factually false" or
22           "legally false" claims, nor does it refer to "express
23           certification" or "implied certification."  Indeed, it does
24           not refer to "certification" at all.  See United States ex
25           rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th
26           Cir.2006) (refusing to give the term "certification" a
27           "paramount and talismanic significance" in part because it
28           does not appear in the text of the FCA) . . . .

1  Id. at 385-86.

2      To be clear, the government does not contend that such

3  categories should never be employed, or are never useful for

4  analyzing an FCA action, if the facts fit, as they often do.

5  Conduct that falls squarely within the parameters of such

6  theories may presumptively be assumed to violate the FCA.

7  However, Amphastar's FCA claim should not be judged solely by

8  whether it properly fits a theory of false certification or the

9  other categories that Aventis seeks to impose.  Rather, the

10  fundamental question is whether Amphastar's allegations fit

11  within the language and purpose of the Act, which, as noted, was

12  intended to reach "all types of fraud .. . that might result in

13  financial loss to the government."  Cook County, 538 U.S. at 129.

14  III.  KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES OF CONDUCT

15        THAT RESULT IN ARTIFICIALLY INFLATED CLAIMS TO THE

16        GOVERNMENT CAN VIOLATE THE FCA.

17      Amphastar's complaint alleges that Aventis, through

18  concealment of material information from, and misrepresentations

19  to, the Patent and Trademark Office ("PTO"), among a variety of

20  other false statements and fraudulent conduct, foreclosed generic

21  competition in the United States market for enoxaparin, a widely

22  employed drug that reduces blood clotting, with the effect that

23  the prices for Aventis's branded version of enoxoparin, Lovenox,

24  were artificially inflated.  According to Amphastar, the

25  government was among the buyers that paid these inflated prices,

26  when it purchased or paid for Lovenox under various federal

27  health care programs.  At bottom, the relator is alleging that

28  the government was charged artificially inflated prices for the

1   drug at issue.

2       Artificially inflated claims to the government clearly may

3   form the basis for liability under the FCA.  See United States ex

4   rel. Frascella v. Oracle Corp., 751 F.Supp.2d 842 (E.D. Va. 2010)

5   (false claims artificially inflated by manipulating transactions

6   to avoid best pricing requirement); United States ex rel. Ven-A-

7   Care v. Actavis Mid Atlantic LLC, 659 F.Supp.2d 262 (D.Mass.

8   2009) (finding an FCA violation for false claims artificially

9   inflated by fraudulent pricing scheme); Massachusetts v. Mylan

10  Laboratories, 608 F.Supp.2d 127 (D. Mass. 2008) (same, under

11  State False Claims Act citing federal FCA precedent); United

12  States v. General Dynamics Corp., 19 F.3d 770 (2nd Cir. 2004)

13  (false claims artificially inflated by kickback payments); United

14  States v. Rachel, 289 F.Supp.2d 688 (D. Md. 2003) (false claims

15  artificially inflated by mark-ups though sham entity);  Murray &

16  Sorenson v. U.S., 207 F.2d 119 (1st Cir. 1953)(false claims

17  artificially inflated by insider tip); United States ex rel.

18  Marcus v. Hess, 317 U.S. 537 (1943) (false claims artificially

19  inflated by collusive bidding).  Because the claims are false in

20  this straightforward and basic sense, there is no need to

21  evaluate this case under the constructs of "false certification"

22  or "promissory fraud," as defendant suggests.  Reliance on

23  Hendow, supra, is thus misplaced because there is nothing in that

24  decision that suggests that the analysis the court employed there

25  excluded other bases for establishing liability under the FCA.

26      For the same reason, an FCA claim premised upon false

27  statements or a fraudulent course of conduct resulting in

28  artificially inflated claims to the government need not be

independently analyzed under the antitrust laws.  For example, in a seminal Supreme Court case analyzing the defendants' liability for bid rigging under the FCA, the Court did not impose any requirement that the government first demonstrate a violation of the antitrust laws in order to establish FCA liability.  <u>Hess</u>, <u>supra</u>. <u>See also United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.</u>, 786 F.Supp.2d 110 (D. D.C. 2011).

Similarly, the fact that the alleged misconduct and false statements here involved the PTO, rather than CMS, the ultimate payor of the claims, does not necessarily remove the claims from the ambit of the FCA.  As a textual matter, the FCA is not limited to false or fraudulent statements made directly to the Government official that pays a false claim.  Instead, as this Circuit and other courts have recognized, the Act encompasses all fraudulent attempts to cause the Government to pay out money, regardless whether the fraud is completed in one step or in multiple stages.  <u>See</u> <u>Hendow</u>, <u>supra; United States ex rel. Main v. Oakland City Univ.</u>, 426 F.3d 914, 916 (7th Cir. 2005) ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork.").  Using a false or fraudulent statement to obtain a patent that causes inflated prices to the government may thus be actionable under the FCA, to the extent there is a sufficient nexus between the false statements and the subsequent claims for payment.  Such activity falls, at a minimum, within the FCA's prohibition on "causing" the presentation of a false claim to the Government, 31 U.S.C. 3729(a)(1).  Moreover, interpreting the FCA to immunize false

7

1  statements that have an impact on the government's payment of an
2  inflated claim would seriously undermine the Government's ability
3  to prosecute fraud in the many programs that rely upon the
4  actions of other agencies (or even private parties) to serve as
5  gatekeepers.  <u>See, e.g.,</u> <u>United States v. Chapman University, et</u>
6  <u>al.</u>, 2006 WL 1562231 at *3 (C.D.Cal.) (false statements to
7  private accrediting agency used to qualify for federal student
8  loan program were actionable under the FCA).

9       In sum, therefore, the relator's allegations that Aventis
10  engaged in a fraudulent scheme that caused the government to pay
11  inflated prices can state a potentially actionable claim under
12  the FCA, provided the relator has plead a sufficient nexus
13  between the fraudulent scheme and the prices ultimately paid by
14  the Government (as well as the other elements required for FCA
15  liability).  The United States takes no position on whether the
16  relator has adequately pled facts sufficient to support that
17  theory here.[1]

18  ///

19  ///

20  ///

21

22

23  _____

24  [1]     Even if one were to adopt the doctrinaire approach to
   falsity suggested by the defendants, the defendants' argument
   that the relator's claims cannot be false unless they satisfy the
25  requirements for false certification liability is still without
   merit.  The courts have only required a false certification or
26  misrepresentation, whether implied or express, where a claim is
   deemed to be legally false.  <u>See</u> <u>Mikes v. Straus</u>, 274 F.3d 687,
27  696-97 (2d Cir. 2001).  Where, as here, the claim is inflated and
   therefore factually false, no additional certification or
28  misrepresentation is required.  <u>See</u> <u>Hess</u>, <u>supra</u>; <u>General</u>
   <u>Dynamics</u>, <u>supra</u>;  <u>Ven-A-Care</u>, <u>supra</u>.

IV.   ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE TO THE UNITED
      STATES.

If the Court dismisses this action because it concludes that Amphastar failed to plead with sufficient particularity, any such dismissal should be without prejudice to the United States. Pursuant to the False Claims Act, a relator files his complaint on behalf of the United States, and once the United States has notified the Court that it declines to pursue the relator's allegations, the relator is free to pursue them on his own.   31 U.S.C. § 3730.   Under such circumstances, which are those of the present action, the United States neither files the complaint that initiated the action nor serves the complaint on the defendant.   Because the United States has no part in preparing such complaints, it should not be prejudiced if a relator has failed to plead its allegations sufficiently.   Such a dismissal does not constitute a ruling on the merits of the defendant's conduct, and does not mean that a better informed relator or the United States could not make out a viable claim in the future.

Moreover, a dismissal with prejudice would be unfair to the United States because a relator's complaint that is broadly drafted, if dismissed with prejudice as to the United States, could improperly be argued by a defendant to have the preclusive effect of preventing future actions by the United States against the defendant for conduct that the United States did not investigate and did not know was part of the relator's action. This result would not accord with the purpose of the False Claims Act *qui tam* provisions, which is assisting the United States in pursuing fraud, not hindering it.   See United States ex rel.

1 <u>Williams v. Bell Helicopter Textron Inc.</u>, 417 F.3d 450, 455 (5th

2 Cir. 2005) (holding that dismissal with prejudice as to the

3 United States was improper where the basis for dismissal was

4 failure to meet the heightened pleading standard under

5 Fed.R.Civ.P. 9(b)).

6     For similar reasons, if the relator's complaint is dismissed

7 on jurisdictional grounds based on the public disclosure bar, any

8 such dismissal should be without prejudice to the United States.

9 The bar operates only as to relators and cannot be employed to

10 dismiss claims against the government.

11     Accordingly, the United States submits that any dismissal,

12 if granted, should be without prejudice to the United States.

13 V.   <u>CONCLUSION</u>

14     The government respectfully requests that the Court consider

15 the foregoing points and authorities when ruling on Aventis's

16 Motion to Dismiss.  To the extent that this brief does not

17 address certain other legal issues raised by Aventis's Motion,

18 the government does not necessarily endorse Aventis's arguments.

19 Moreover, the government takes no position as to whether the

20 relator's complaint is adequately pled under the applicable legal

21 standards set forth herein, or under Fed.R.Civ. P 9(b), and takes

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1   no position as to the merits of the relator's factual allegations

2   or its ultimate ability to adduce competent proof thereof.

3

4                                 Respectfully submitted,

5

    DATED: March 29, 2011          STUART F. DELERY
6                                   Acting Assistant Attorney General

7                                   ANDRÉ BIROTTE JR.
                                    United States Attorney
8                                   LEON W. WEIDMAN, AUSA
                                    Chief, Civil Division
9                                   WENDY WEISS, AUSA
                                    Chief, Civil Fraud Section
10

11                                  /s/_____
                                    LINDA A. KONTOS, AUSA
12
                                    JOYCE R. BRANDA
13                                  JAMIE ANN YAVELBERG
                                    RICHARD S. NICHOLSON
14                                  Attorneys, Civil Division

15
                                    /s/_____
16                                  RICHARD S. NICHOLSON,
                                    Trial Attorney
17
                                    Attorneys for the
18                                  United States of America

19

20

21

22

23

24

25

26

27

28

                                    11