1  STUART F. DELERY
   Acting Attorney General
2  ANDRÉ BIROTTE JR.
   United States Attorney
3  LEON W. WEIDMAN, AUSA
   Chief, Civil Division
4  WENDY WEISS, AUSA
   Chief, Civil Fraud Section
5  SUSAN R. HERSHMAN, AUSA
   Deputy Chief, Civil Fraud Section
6  California State Bar No. 083621
   LINDA A. KONTOS, AUSA
7  Office of the United States Attorney
        Room 7516, Federal Building
8       300 North Los Angeles Street
        Los Angeles, California  90012
9       Telephone: (213) 894-5709; Facsimile: (213) 894-2380
        Email: Susan.Hershman@usdoj.gov
10 JOYCE R. BRANDA
   JAMIE ANN YAVELBERG
11 RICHARD S. NICHOLSON
   Attorneys, Civil Division
12 United States Department of Justice
        P.O. Box 261, Ben Franklin Station
13      Washington, D.C. 20044
        Telephone:  (202) 616-0345; Facsimile:  (202) 305-7404
14      Email: Richard.Nicholson@usdoj.gov
   Attorneys for the United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| The UNITED STATES, the DISTRICT OF COLUMBIA, the states of CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MASSACHUSETTS, MICHIGAN, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, and WISCONSIN, *ex rel.* AMPHASTAR PHARMACEUTICALS, INC., <br><br>    Plaintiffs/Relator,<br><br>    v.<br><br>AVENTIS PHARMA S.A., AVENTIS PHARMACEUTICALS, INC., SANOFI-AVENTIS S.A., and DOES 1-10,<br><br>    Defendants. | Case No. EDCV 09-0023-MJG (OPx)<br>[Originally Case No. EDCV 09-0023 SGL(OPx)]<br><br>**UNITED STATES'** *AMICUS CURIAE* **BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS FALSE CLAIMS ACT** *QUI TAM* **COMPLAINT**<br><br>Date:    April 20, 2012<br>Time:    ___:_0_ .m.<br>Place:   Greenbelt, MD Courthouse, Courtroom of the Honorable Marvin J. Garbis |

TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | THE GOVERNMENT'S INTEREST IN THIS CASE | 1 |
| II. | THE FCA BROADLY APPLIES TO KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES OF CONDUCT RESULTING IN FALSE CLAIMS TO THE GOVERNMENT. | 2 |
| III. | KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES OF CONDUCT THAT RESULT IN ARTIFICIALLY INFLATED CLAIMS TO THE GOVERNMENT CAN VIOLATE THE FCA. | 5 |
| IV. | ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE TO THE UNITED STATES. | 9 |
| V. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGES

Cook County, Illinois v. United States ex rel. Chandler,
   538 U.S. 119 (2003) .................................. 3,6

Harrison v. Westinghouse Savannah River Company,
   176 F.3d 776 (4th Cir. 1999) ......................... 2

United States ex rel. Main v. Oakland City University,
   426 F.3d 914 (7th Cir. 2005) ......................... 7

Massachusetts v. Mylan Laboratories,
   608 F. Supp. 2d 127 (D. Mass. 2008) .................. 6

Mikes v. Straus,
   274 F.3d 687 (2d Cir. 2001) .......................... 8

Murray & Sorenson v. U.S.,
   207 F.2d 119 (1st Cir. 1953) ......................... 6

United States ex rel. Frascella v. Oracle Corp.,
   751 F. Supp. 2d 842 (E.D. Va. 2010) .................. 6

United States ex rel. Hutcheson v. Blackstone Medical, Inc.,
   647 F.3d 377 (1st Cir. 2011) ......................... 3, 4

United States ex rel. Marcus v. Hess,
   317 U.S. 537 (1943) .................................. 6, 7, 8

United States ex rel. Miller v. Bill Harbert Intern.
Const., Inc.,
   786 F. Supp. 2d 110 (D. D.C. 2011) ................... 7

United States ex rel. Ven-A-Care v. Actavis Mid
Atlantic LLC, 659 F. Supp. 2d 262 (D.Mass. 2009) ........ 6

United States ex rel. Williams v. Bell Helicopter
Textron Inc.,
   417 F.3d 450 (5th Cir. 2005) ......................... 9

United States v. Chapman University, et al.,
   2006 WL 1562231 (C.D.Cal.) ........................... 8

United States v. General Dynamics Corp.,
   19 F.3d 770 (2nd Cir. 2004) .......................... 6, 8

United States v. Hendow v. University of Phoenix,
   461 F.3d 1166 (9th Cir. 2006) ........................ passim

United States v. Neifert-White Co.,
   390 U.S. 228, 232, 233 ............................... 2,3

United States v. Rachel,
    289 F. Supp. 2d 688 (D. Md. 2003) ..................... 6

### FEDERAL STATUTES

31 U.S.C. § 3729 ............................................. 1,7

31 U.S.C. § 3730 ............................................. 9

31 U.S.C. § 3730 *et seq* .................................... 1

Fed.R.Civ.P. 9(b) ............................................ 10

Pursuant to the Court's February 16, 2012 Order in the above-captioned action, the United States of America ("the government") respectfully submits this *amicus curiae* brief in response to the Motion to Dismiss False Claims Act *Qui Tam* Complaint ("Motion to Dismiss" and "Motion"), filed by defendants Aventis Pharma S.A., Aventis Pharmaceuticals, Inc., and Sanofi-Aventis S.A. (collectively, "Aventis" and "defendant") on January 19, 2012. This brief does not take a position on the merits of Aventis's Motion or the merits of the *qui tam* plaintiff's action. Rather, this brief addresses certain arguments made by Aventis in the Motion regarding the proper elements of a case under the federal False Claims Act (31 U.S.C. § 3729 *et seq.* ("FCA")) that the government believes are incorrect or require clarification.

I. THE GOVERNMENT'S INTEREST IN THIS CASE

On January 7, 2009, the relator, Amphastar Pharmaceuticals, Inc. ("Amphastar"), filed this action pursuant to the *qui tam* provisions of the FCA, 31 U.S.C. § 3730 *et seq*. On October 21, 2011, the government gave notice that it was not intervening in the action. Nonetheless, because any rulings in this case could affect the government's ability to bring future FCA cases, the government has a continuing interest in this matter. The FCA is the government's principal tool for fighting fraud in government programs, and the government is thus concerned that the FCA be interpreted in a manner consistent with its language and purposes.

While Aventis generally acknowledges the properly broad reach of the FCA, at several points in its Motion, Aventis

1

attempts to argue, incorrectly, that the relator's claims must fit into certain tightly defined constructs, such as "false certification," or that the relator must establish a viable antitrust claim, in order to assert a viable FCA claim. The government submits this *amicus curiae* brief to assist the Court in properly framing the substantive FCA standards to which the relator's complaint should be held on Aventis's Motion to Dismiss. The government also requests that, if the Court dismisses Amphastar's complaint on pleading or jurisdictional grounds, then such dismissal should be without prejudice to the United States.

II. THE FCA BROADLY APPLIES TO KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES OF CONDUCT RESULTING IN FALSE CLAIMS TO THE GOVERNMENT.

The FCA "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." United States v. Neifert-White Co., 390 U.S. 228, 233. In enacting the FCA, "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" Cook County, Illinois v. United States ex rel. Chandler, 538 U.S. 119, 129 (2003) (quoting Neifert-White, supra, 390 U.S. at 233). See also, United States v. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006); Harrison v. Westinghouse Savannah River Company, 176 F.3d 776, 783 (4th Cir. 1999) ("any time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach").

In asserting that the allegations of Amphastar's complaint

do not adequately plead "falsity," Aventis argues that they must fall into certain narrow categories - for example, that Amphastar must plead "false certification" of compliance with a statute, rule, or regulation that conditions government payment on compliance. Aventis Memo at 24-28. Aventis also argues throughout that Amphastar must plead claims under the federal antitrust laws, and also, "false certification" of compliance with such laws, to maintain its FCA claims. Aventis Memo at 13-23.

Such arguments seek to create an unduly restrictive view of the FCA, and are at odds with the broad reach of the statute and the case law relevant to Aventis's alleged misconduct. The Supreme Court has stated that:

> [i]n the various contexts in which questions of the proper construction of the Act have been presented, the Court has consistently refused to accept a rigid, restrictive reading, even at the time when the statute imposed criminal sanctions as well as civil.

Neifert-White, 390 U.S. at 232. As a result, in analyzing conduct challenged under the FCA, it is not necessary to categorize such conduct rigidly within the particular legal constructs upon which Aventis insists.

This point was recently underscored in United States ex rel. Hutcheson v. Blackstone Medical, Inc., 647 F.3d 377 (1st Cir. 2011), where the First Circuit similarly rejected the contention that a claim could be found false only under a certification theory of liability. In that case, the relator alleged that the defendant had engaged in a kickback scheme to induce physicians

3

to use the defendant's medical devices in spinal surgeries, for which false claims were made to the government. <u>Id.</u> at 378. The lower court dismissed the relator's claims, employing concepts such as "express certification" versus "implied certification," and "factual falsity" versus "legal falsity," among others.

The First Circuit, in reversing the lower court, declined to adopt "any categorical rules as to what counts as a materially false or fraudulent claim under the FCA." <u>Id.</u> at 380. The various court-created categories of FCA conduct, the Court noted, "may do more to obscure than clarify the issues" in an FCA action. <u>Id.</u> at 385-86. The Court observed that:

> In the context of the FCA's lengthy history, which dates back to its enactment during the Civil War, . . . these judicially created formal categories are of relatively recent vintage. They have not been adopted by the Supreme Court or this court.

<u>Id.</u> at 385. The Court further explained:

> Judicially-created categories sometimes can help carry out a statute's requirements, but they can also create artificial barriers that obscure and distort those requirements. The text of the FCA does not refer to "factually false" or "legally false" claims, nor does it refer to "express certification" or "implied certification." Indeed, it does not refer to "certification" at all. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir.2006) (refusing to give the term "certification" a "paramount and talismanic significance" in part because it does not appear in the text of the FCA) . . . .

Id. at 385-86.

To be clear, the government does not contend that such categories should never be employed, or are never useful for analyzing an FCA action, if the facts fit, as they often do. Conduct that falls squarely within the parameters of such theories may presumptively be assumed to violate the FCA. However, Amphastar's FCA claim should not be judged solely by whether it properly fits a theory of false certification or the other categories that Aventis seeks to impose. Rather, the fundamental question is whether Amphastar's allegations fit within the language and purpose of the Act, which, as noted, was intended to reach "all types of fraud .. . that might result in financial loss to the government." Cook County, 538 U.S. at 129.

## III. KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES OF CONDUCT THAT RESULT IN ARTIFICIALLY INFLATED CLAIMS TO THE GOVERNMENT CAN VIOLATE THE FCA.

Amphastar's complaint alleges that Aventis, through concealment of material information from, and misrepresentations to, the Patent and Trademark Office ("PTO"), among a variety of other false statements and fraudulent conduct, foreclosed generic competition in the United States market for enoxaparin, a widely employed drug that reduces blood clotting, with the effect that the prices for Aventis's branded version of enoxoparin, Lovenox, were artificially inflated. According to Amphastar, the government was among the buyers that paid these inflated prices, when it purchased or paid for Lovenox under various federal health care programs. At bottom, the relator is alleging that the government was charged artificially inflated prices for the

drug at issue.

Artificially inflated claims to the government clearly may form the basis for liability under the FCA.  See <u>United States ex rel. Frascella v. Oracle Corp.</u>, 751 F.Supp.2d 842 (E.D. Va. 2010) (false claims artificially inflated by manipulating transactions to avoid best pricing requirement); <u>United States ex rel. Ven-A-Care v. Actavis Mid Atlantic LLC</u>, 659 F.Supp.2d 262 (D.Mass. 2009) (finding an FCA violation for false claims artificially inflated by fraudulent pricing scheme); <u>Massachusetts v. Mylan Laboratories</u>, 608 F.Supp.2d 127 (D. Mass. 2008) (same, under State False Claims Act citing federal FCA precedent); <u>United States v. General Dynamics Corp.</u>, 19 F.3d 770 (2nd Cir. 2004) (false claims artificially inflated by kickback payments); <u>United States v. Rachel</u>, 289 F.Supp.2d 688 (D. Md. 2003) (false claims artificially inflated by mark-ups though sham entity); <u>Murray & Sorenson v. U.S.</u>, 207 F.2d 119 (1st Cir. 1953)(false claims artificially inflated by insider tip); <u>United States ex rel. Marcus v. Hess</u>, 317 U.S. 537 (1943) (false claims artificially inflated by collusive bidding).  Because the claims are false in this straightforward and basic sense, there is no need to evaluate this case under the constructs of "false certification" or "promissory fraud," as defendant suggests.  Reliance on <u>Hendow</u>, <u>supra,</u> is thus misplaced because there is nothing in that decision that suggests that the analysis the court employed there excluded other bases for establishing liability under the FCA.

For the same reason, an FCA claim premised upon false statements or a fraudulent course of conduct resulting in artificially inflated claims to the government need not be

independently analyzed under the antitrust laws. For example, in a seminal Supreme Court case analyzing the defendants' liability for bid rigging under the FCA, the Court did not impose any requirement that the government first demonstrate a violation of the antitrust laws in order to establish FCA liability. <u>Hess</u>, <u>supra</u>. <u>See</u> <u>also</u> <u>United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.</u>, 786 F.Supp.2d 110 (D. D.C. 2011).

Similarly, the fact that the alleged misconduct and false statements here involved the PTO, rather than CMS, the ultimate payor of the claims, does not necessarily remove the claims from the ambit of the FCA. As a textual matter, the FCA is not limited to false or fraudulent statements made directly to the Government official that pays a false claim. Instead, as this Circuit and other courts have recognized, the Act encompasses all fraudulent attempts to cause the Government to pay out money, regardless whether the fraud is completed in one step or in multiple stages. <u>See</u> <u>Hendow</u>, <u>supra</u>; <u>United States ex rel. Main v. Oakland City Univ.</u>, 426 F.3d 914, 916 (7th Cir. 2005) ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork."). Using a false or fraudulent statement to obtain a patent that causes inflated prices to the government may thus be actionable under the FCA, to the extent there is a sufficient nexus between the false statements and the subsequent claims for payment. Such activity falls, at a minimum, within the FCA's prohibition on "causing" the presentation of a false claim to the Government, 31 U.S.C. 3729(a)(1). Moreover, interpreting the FCA to immunize false

7

statements that have an impact on the government's payment of an inflated claim would seriously undermine the Government's ability to prosecute fraud in the many programs that rely upon the actions of other agencies (or even private parties) to serve as gatekeepers. See, e.g., United States v. Chapman University, et al., 2006 WL 1562231 at *3 (C.D.Cal.) (false statements to private accrediting agency used to qualify for federal student loan program were actionable under the FCA).

In sum, therefore, the relator's allegations that Aventis engaged in a fraudulent scheme that caused the government to pay inflated prices can state a potentially actionable claim under the FCA, provided the relator has plead a sufficient nexus between the fraudulent scheme and the prices ultimately paid by the Government (as well as the other elements required for FCA liability). The United States takes no position on whether the relator has adequately pled facts sufficient to support that theory here.[1]

///
///
///

---

[1] Even if one were to adopt the doctrinaire approach to falsity suggested by the defendants, the defendants' argument that the relator's claims cannot be false unless they satisfy the requirements for false certification liability is still without merit. The courts have only required a false certification or misrepresentation, whether implied or express, where a claim is deemed to be legally false. See Mikes v. Straus, 274 F.3d 687, 696-97 (2d Cir. 2001). Where, as here, the claim is inflated and therefore factually false, no additional certification or misrepresentation is required. See Hess, supra; General Dynamics, supra; Ven-A-Care, supra.

8

IV. <u>ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE TO THE UNITED STATES.</u>

If the Court dismisses this action because it concludes that Amphastar failed to plead with sufficient particularity, any such dismissal should be without prejudice to the United States. Pursuant to the False Claims Act, a relator files his complaint on behalf of the United States, and once the United States has notified the Court that it declines to pursue the relator's allegations, the relator is free to pursue them on his own. 31 U.S.C. § 3730. Under such circumstances, which are those of the present action, the United States neither files the complaint that initiated the action nor serves the complaint on the defendant. Because the United States has no part in preparing such complaints, it should not be prejudiced if a relator has failed to plead its allegations sufficiently. Such a dismissal does not constitute a ruling on the merits of the defendant's conduct, and does not mean that a better informed relator or the United States could not make out a viable claim in the future.

Moreover, a dismissal with prejudice would be unfair to the United States because a relator's complaint that is broadly drafted, if dismissed with prejudice as to the United States, could improperly be argued by a defendant to have the preclusive effect of preventing future actions by the United States against the defendant for conduct that the United States did not investigate and did not know was part of the relator's action. This result would not accord with the purpose of the False Claims Act *qui tam* provisions, which is assisting the United States in pursuing fraud, not hindering it. <u>See United States ex rel.</u>

9

1  Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 455 (5th
2  Cir. 2005) (holding that dismissal with prejudice as to the
3  United States was improper where the basis for dismissal was
4  failure to meet the heightened pleading standard under
5  Fed.R.Civ.P. 9(b)).

      For similar reasons, if the relator's complaint is dismissed on jurisdictional grounds based on the public disclosure bar, any such dismissal should be without prejudice to the United States. The bar operates only as to relators and cannot be employed to dismiss claims against the government.

      Accordingly, the United States submits that any dismissal, if granted, should be without prejudice to the United States.

## V. CONCLUSION

      The government respectfully requests that the Court consider the foregoing points and authorities when ruling on Aventis's Motion to Dismiss. To the extent that this brief does not address certain other legal issues raised by Aventis's Motion, the government does not necessarily endorse Aventis's arguments. Moreover, the government takes no position as to whether the relator's complaint is adequately pled under the applicable legal standards set forth herein, or under Fed.R.Civ. P 9(b), and takes

///
///
///
///
///
///
///

1 | no position as to the merits of the relator's factual allegations
2 | or its ultimate ability to adduce competent proof thereof.

                                        Respectfully submitted,

DATED: March 29, 2011        STUART F. DELERY
                                        Acting Assistant Attorney General

                                        ANDRÉ BIROTTE JR.
                                        United States Attorney
                                        LEON W. WEIDMAN, AUSA
                                        Chief, Civil Division
                                        WENDY WEISS, AUSA
                                        Chief, Civil Fraud Section


                                        /s/_____
                                        LINDA A. KONTOS, AUSA

                                        JOYCE R. BRANDA
                                        JAMIE ANN YAVELBERG
                                        RICHARD S. NICHOLSON
                                        Attorneys, Civil Division


                                        /s/_____
                                        RICHARD S. NICHOLSON,
                                        Trial Attorney

                                        Attorneys for the
                                        United States of America