FILED

2012 DEC 3 AM 11: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY____

1 JAN P. WEIR, Cal. Bar No. 106652
jan.weir@klgates.com
2 JOSEPH J. MELLEMA, Cal. Bar No. 248118
joseph.mellema@klgates.com
3 TAYLOR C. FOSS, Cal. Bar No. 253486
taylor.foss@klgates.com
4 JENNIFER A. MAURI, Cal. Bar No. 276522
jennifer.mauri@klgates.com
5
JAMES W. MATTHEWS, Mass. Bar No. 56050
6 james.matthews@klgates.com
KATY E. KOSKI, Mass. Bar No. 650613
7 katy.koski@klgates.com
JASON L. DRORI, Mass. Bar No. 665865
8 jason.drori@klgates.com
9 K&L GATES LLP
1 Park Place
10 Twelfth Floor
Irvine, CA 92614
11 Telephone: (949) 253-0900
Fax: (949) 623-4499
12
Attorneys for Relator AMPHASTAR PHARMACEUTICALS, INC.
13

FILED VI... CRC2005

14 UNITED STATES DISTRICT COURT

15 CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17 The UNITED STATES, the DISTRICT OF COLUMBIA, the states of CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MASSACHUSETTS, MICHIGAN, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WISCONSIN, *ex rel.* AMPHASTAR PHARMACEUTICALS, INC. | No. EDCV 09-00023 MJG (OPx) **PLAINTIFFS' AMENDED *QUI TAM* COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE FALSE CLAIMS ACTS** **DEMAND FOR JURY TRIAL** Judge: Hon. Marvin J. Garbis Courtroom: |

Plaintiffs/Relator

vs.

AVENTIS PHARMA S.A., AVENTIS
PHARMACEUTICALS, INC., SANOFI-
AVENTIS S.A., and DOES 1-10

Defendants.

18
19
20
21
22
23
24
25
26
27
28

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

Plaintiffs allege as follows:

## **INTRODUCTION**

1.     This is a *qui tam* action brought against Defendants for treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. 3729, *et seq.* and related False Claims actions under related State statutes as will be alleged below. The False Claims Act, 31 U.S.C. § 3729, *et seq.* and the related State statutes provide for treble damages and civil penalties against anyone who, through fraud or falsity, files—or causes to be filed—a false claim to the government.

2.     This action arises from fraudulent claims in the form of overcharges submitted to the United States and state governments alleged herein, and their agencies, arising from the fraud that Defendants perpetrated on the U.S. Patent & Trademark Office (the "Patent Office"), in order to obtain an illegal monopoly in the United States over enoxaparin and the subsequent false and frivolous representations to the U.S. Food and Drug Administration ("FDA"), and other illegal acts complained of herein.

3.     Relator Amphastar has standing to bring this *qui tam* action on behalf of the United States and state governments alleged herein.

4.     The Federal False Claims Act, pursuant to 31 U.S.C. § 3730(b)(2), and the majority of the equivalent state false claims acts require this complaint to be filed under seal and remain sealed for a minimum of sixty days without service on the Defendants during that period to allow the government to determine whether they will join the action. The Louisiana Medical Assistance Programs Integrity Law and the Michigan Medicaid False Claims Act require such a

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1  complaint to remain sealed for at least ninety days.  The Virginia Fraud Against

2  Taxpayers Act, the Massachusetts False Claims Law, and the Indiana False Claims

3  Act require such a complaint to remain sealed for at least 120 days.  The District of

4  Columbia False Claims Law allows for the complaint to remain sealed for up to

5  180 days depending on the actions of the government attorney.

6

7                                    **PARTIES**

8        5.    Relator Amphastar Pharmaceuticals, Inc. is a Delaware corporation

9  with its principle place of business in Rancho Cucamonga, California.  Amphastar

10 brings this *qui tam* action for violations of the False Claims Acts alleged below on

11 behalf of itself, the United States, and the various States alleged below, and their

12 respective agencies.

13

14       6.    On information and belief, Defendant Aventis Pharma S.A. was at one

15 time a French corporation with its principle place of business in Antony, France.

16 Aventis Pharma S.A. is a successor-in-interest to Rhone-Poulenc Rorer S.A.,

17 another French corporation that merged in 1999 with Hoechst, a German company,

18 to form Aventis Pharma S.A.  On information and belief, Defendant Aventis

19 Pharmaceuticals, Inc. was at one time a wholly owned subsidiary of Aventis

20 Pharma S.A. and was a Delaware corporation with its principle place of business in

21 Bridgewater, New Jersey.  On information and belief, on December 31, 2004,

22 defendants Aventis Pharma S.A. and Aventis Pharmaceuticals, Inc., merged with

23 and into defendant Sanofi-Aventis S.A., which is the surviving company.  On

24 information and belief, Sanofi-Aventis is a French corporation with a principle

25 place of business in the United States located in Bridgewater, New Jersey and

26 holding itself out, and continuing  to do business, under the names Aventis Pharma

27 and Aventis Pharmaceuticals.  Defendants and their predecessors in interest will be

28 collectively referred to herein as "Aventis."  In May 2011, after the initiation of

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1   this lawsuit, Sanofi-Aventis simplified its name to "Sanofi." For the sake of

2   continuity, this Amended Complaint will continue to refer to the company and its

3   many subsidiaries and incarnations as "Aventis."

4

5                    **JURISDICTION AND VENUE**

6           7.    The district court has subject matter jurisdiction over this action

7   pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the

8   United States 31 U.S.C. §§ 3729, *et seq*. This Court has subject matter jurisdiction

9   over the state law claims alleged herein pursuant to 31 U.S.C. § 3732(b).

10

11          8.    This Court has *in personam* jurisdiction over Defendants because each

12  regularly conducts business in California and because some of the acts complained

13  of herein occurred in California.

14

15          9.    Venue is proper in this Court with respect to each Defendant pursuant

16  to 28 U.S.C. §§ 1391(b) and (c) because each has regularly transacted business

17  within this District, is subject to personal jurisdiction in this District, and because a

18  substantial part of the events giving rise to the claims alleged herein occurred in

19  this District.

20

21                   **FACTS COMMON TO ALL COUNTS**

22          10.   In the late 1980s, Aventis initiated a scheme to submit false claims to

23  the United States and state governments alleged herein in violation of both federal

24  and state law. At the time Aventis began preparations to sell enoxaparin in the

25  United States, Aventis knew that it had no patent protection in the United States for

26  enoxaparin. Aventis also knew that a patent would allow it to charge higher prices,

27  and obtain higher profit margins, for the sale of enoxaparin.

28

-3-

11.     At the same time, Aventis knew that the United States and state governments alleged herein would be purchasers and third-party payers for enoxaparin through direct or indirect sales from Aventis or by the payment of claims for prescription drug reimbursement submitted by providers under government programs, including Medicare and Medicaid.  Aventis knew that it would be submitting claims to the United States and state governments alleged herein and causing or inducing others to submit claims based upon Aventis's illegally-inflated pricing.  Aventis was also well aware of the statutory schemes that govern the methods by which the United States and state governments alleged herein reimbursed outpatient drugs covered under Medicare and Medicaid.

12.     In order to charge illegally-inflated prices, prior to entering the market in the United States with enoxaparin, Aventis fraudulently applied for a United States patent to secure the exclusive right to sell enoxaparin in the United States, including the exclusive right to sell enoxaparin to the state governments alleged herein and to pharmacies, physicians, and other providers who would seek reimbursement for dispensing enoxaparin to government beneficiaries, including Medicare and Medicaid beneficiaries.

13.     On June 26, 1991, Aventis filed United States Application No. 721,315 entitled "Mixtures of Particular LMW Heparinic Polysaccharides for the Prophylaxis/Treatment of Acute Thrombotic Events," naming Roger Debrie as the alleged inventor.  Aventis subsequently filed a continuation of Application No. 721,315, which was given United States Patent Application No. 92,577 (the "'577 application").

14.     The '577 application claimed an allegedly novel low molecular weight heparin composition falling within certain defined molecular weight

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1  parameters prepared by the depolymerization of naturally-occurring heparin. The
2  '577 application represented that the allegedly novel low molecular weight heparin
3  compositions exhibited a half-life longer than known prior art low molecular
4  weight heparins including those disclosed in European Patent No. EP. 40,144. The
5  '577 application included Example 6, which purported to detail a study where the
6  half-lives of low molecular weight heparins of the type claimed in the '577
7  application were compared to low molecular weight heparins prepared according
8  to the teachings of the '144 patent.
9
10     15.    European Patent No. EP. 40,144 (the "'144 patent"), entitled
11  "Nouveaux Polysaccharides Sulfates, Procedes Pour Leur Preparation Et Leur
12  Utilisation Comme Medicaments" was another Aventis patent originally filed on
13  May 8, 1981 naming Dr. Mardiguian as the sole inventor. The '144 patent claimed
14  priority to an earlier Aventis patent application filed on May 14, 1980 in France
15  (the "French Application No. 8,010,791" or the "'791 application"). The '144
16  patent disclosed and claimed various low molecular weight heparin compositions
17  obtained from the same three-step salification, esterification, and depolymerization
18  process disclosed in the '577 application.
19
20     16.    Aventis had filed a United States patent application based upon its
21  French Application No. 8,010,791, but abandoned that application after it was
22  rejected by the Patent Office. When Aventis later decided to market enoxaparin in
23  the United States, Aventis set out to obtain patent protection in the United States in
24  order to prevent generic competition for enoxaparin, and thereby knowingly and
25  unlawfully gained monopoly power in the United States market. Since Aventis
26  had abandoned the earlier '791 application, Aventis filed the '577 application
27  falsely representing that it had disclosed a novel composition invented by Roger
28  Debrie. Mr. Debrie, however, did not invent a new composition, but merely used

1  the same basic process disclosed in the '144 patent and the related '791 application

2  abandoned earlier.

3

4       17.    Aventis knowingly and falsely included Example 6 in the '577

5  application to misrepresent that a single well-controlled study (a "first

6  pharmacokinetic study") showed that the half-lives of the '577 compositions and

7  those disclosed in the '144 patent were significantly different and therefore that the

8  '577 application disclosed a supposedly novel composition. The data contained in

9  paragraphs (1), (2) and (3) of Example 6, however, came from three different

10  studies, performed for three different purposes at three different times, and was

11  cherry picked to give the false impression that the compositions had significantly

12  different half-lives. Paragraph (3) of Example 6 did not disclose the dose under

13  which the paragraph (3) study was conducted, while paragraph (2) of Example 6

14  stated the studies were conducted "under identical dosage conditions." In fact, the

15  comparative half-life study involving the '577 compositions and those of the '144

16  patent were performed at different dosages. Aventis knew the doses at which the

17  half-life studies were conducted and concealed the fact that the studies were

18  performed at different dosages from the Patent Office.

19

20       18.    Rather than disclose the true conditions of the half-life studies,

21  paragraph (1) of Example 6 used the arbitrary time of 4.5 hours for the 40mg dose

22  of the '577 compositions; paragraph (4) also used 4.5 hours for the 40mg dose.

23  Paragraph (3) used 4.5 hours as well, but did not state that it was for a different

24  dosage, falsely misleading the Patent Office into believing that the results reported

25  in paragraph (3) were taken at a 40mg dose.

26

27       19.    Aventis falsely represented in Example 6 that there was a difference

28  in half-life between the compositions claimed in the '577 application and those of

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1   '144 patent. Indeed, Aventis knew that there was no difference in half-life if the

2   compositions were compared at the same dose.

3

4       20.    Aventis' knowingly false representations regarding the relative half-

5   lives of the compositions of the '577 application and those of the '144 patent were

6   highly material to the issue of patentability of the claims of the '577 application.

7   On several occasions, the Patent Office rejected the claims of the '577 application

8   in view of the teachings of the '144 patent. Aventis specifically relied on the

9   falsely written Example 6 as evidence that the compositions claimed in the '577

10  patent were patentable over the compositions of the '144 patent. Aventis falsely

11  represented: "Given the fact that the inventive formulations and those of the

12  European patent exhibit different properties, such as half-life, it necessarily follows

13  that the formulations of the invention could not possibly be the same as those of

14  the European patent." Based upon these false representations and in reliance

15  thereon, the Patent Office allowed the claims of the '577 application and issued the

16  '577 application as United States Patent No. 5,389,618 (the "'618 patent") on

17  February 14, 1995. But for Aventis' false representations and omissions, the '618

18  patent would not have been allowed by the Patent Office.

19

20      21.    Aventis's patent application falsely certified that the named inventor

21  was the original and first inventor of the inventions claimed in the '618 patent, and

22  that the claimed inventions were not previously patented or described in any

23  printed publication in any country, and that Aventis had complied with its duty of

24  candor owed to the Patent Office.

25

26      22.    Starting in 1988, new technology enabled Aventis to measure the

27  molecular weight distribution of enoxaparin. At that time, Aventis measured the

28  molecular weight distribution of a product, which according to the '618 patent was

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1  "prepared according to the [1981] process described in European Patent EP
2  40144." Aventis determined that the molecular weight distribution of the '144
3  patent composition was within the exact ranges claimed in the '618 patent.
4  Aventis fraudulently filed and continued to prosecute the '577 application knowing
5  that the compositions disclosed and claimed therein were neither novel nor
6  patentable over the prior art compositions disclosed in the '144 patent.

7

8      23.    Aventis knowingly concealed the best mode known to it for the
9  manufacture of enoxaparin from the '618 patent's written description. Thus,
10 Aventis was able to illegally obtain monopoly power over enoxaparin in the United
11 States market through its false representations and omissions to the Patent Office
12 and by concealing the best mode for practicing the invention in willful violation of
13 the United States patent and antitrust laws.

14

15     24.    Subsequent to the issuance of the '618 patent, Aventis unlawfully
16 enforced the fraudulently obtained '618 patent by listing it in the FDA's Approved
17 Drug Products with Therapeutic Equivalence Evaluations (the "Orange Book") as
18 covering "Lovenox®," the brand name for Aventis's enoxaparin. By listing the
19 '618 patent in the Orange Book, competitors such as Relator Amphastar were
20 required to provide notice to Aventis of an Abbreviated New Drug Application
21 ("ANDA") filing pursuant to the provisions of the Drug Price Competition and
22 Patent Term Restoration Act (the "Hatch-Waxman Act"), 21 U.S.C.
23 § 355(j)(5)(B)(iii). Aventis was thus able to delay generic entry and competition in
24 the relevant market.

25

26     25.    Aventis also fraudulently listed its United States Patent No. 4,692,435
27 (the "'435 patent") in the Orange Book as also covering Lovenox®. The '435

28

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

patent was fraudulently listed in that it did not cover Lovenox® because, among other reasons, it did not claim a depolymerized heparin.

26.    In 2003, Amphastar filed an ANDA, 76-684, under 21 U.S.C. § 355(j) with the FDA, seeking approval for—and indicating its intent and preparedness to—commercially manufacture, use, and sell enoxaparin in competition with Aventis before the expiration date of the '618 patent.  On information and belief, Aventis learned of Amphastar's ANDA application prior to the normal regulatory notice period set forth in the Hatch-Waxman Act and attempted to cover up its knowing fraud in the procurement of the '618 patent by applying to reissue the '618 patent.  Aventis falsely represented the reasons for the reissue and attempted to cover up its fraud by deleting Example 6 of the '618 patent.

27.    Thereafter, Aventis instituted an objectively baseless litigation against Amphastar, alleging infringement of Aventis's invalid, unenforceable, and fraudulently-obtained '618 patent.  By filing the lawsuit, Aventis triggered a thirty-month stay on FDA approval of Amphastar's ANDA.  Aventis commenced this sham litigation for the anticompetitive purpose of delaying or preventing Amphastar's entry into the relevant market.

28.    During the prosecution of the application that became U.S. Patent No. RE38,743 (the "reissue patent" or the "'743 Patent"), Aventis misrepresented and/or failed to disclose the true reasons for removing Example 6 from the written description of the '618 patent, failed to disclose the dosage of the '144 patent composition compared to the claimed product in Example 6 (even when asked for this dosage by the Patent Office), failed to disclose that a proper comparison of the same dosages indicated there was no significant difference in the half-life of the claimed product and the prior art product, and failed to disclose highly material

-9-

1  studies of compounds prepared according to prior art including the '144 patent,

2  which clearly revealed such prior art anticipated the claims of the '618 patent and

3  the '743 reissue patent.

4

5      29.    Moreover, Aventis made false representations and material omissions

6  to the FDA to forestall or foreclose generic competition and maintain its illegally-

7  obtained monopoly.  Specifically, Aventis represented that a generic drug

8  manufacturer had to show that its manufacturing process was equivalent to

9  Aventis's process in order for the generic enoxaparin to be considered safe and

10  effective.  To support its claim, Aventis falsely represented that its manufacturing

11  process for Lovenox® had not changed since 1981 (and therefore data showing its

12  safety and effectiveness submitted to the FDA were reliable).  Contrary to its

13  representations to the FDA, however, Aventis had changed its manufacturing

14  process, although the changes did not result in a different drug.  Aventis

15  fraudulently concealed this fact from the FDA.

16

17      30.    On information and belief, Aventis has controlled, or has attempted to

18  control, the supply of components or compositions necessary for market approval

19  or the marketing of enoxaparin in a further attempt to maintain its illegal market

20  monopoly.

21

22      31.    Aventis's challenged conduct erected significant barriers to entry into

23  the relevant market in interstate commerce and constitutes a willful attempt to

24  obtain and retain monopoly power over the relevant market.  The conduct

25  complained of has restrained competition in violation of the antitrust laws,

26  enabling Aventis to charge the United States and state governments alleged herein

27  illegally-inflated prices for enoxaparin.

28

32. Aventis has used its illegal monopoly to overcharge the United States and state governments alleged herein. Aventis has charged as much as five times the amount for enoxaparin in the United States as Aventis charges for the same drug in Europe.

33. Defendants, their employees and agents, individually and in concert, knowingly submitted or caused to be submitted false claims to the United States and state governments alleged herein to secure payments for enoxaparin, as described above. These false claims began taking place from the initial sales to the United States and state governments alleged herein of Lovenox®.

34. As a result of Defendants' misconduct, the United States and state governments alleged herein were unaware of the matters set forth herein at the time they paid claims that were submitted or caused to be submitted by Defendants or reimbursed Medicare and Medicaid providers for dispensing Defendants' enoxaparin at illegally high prices resulting from Defendants' fraud; the erroneous beliefs of the United States and state governments alleged herein, which Defendants knowingly caused, were material to making the payments at issue.

35. Medicaid is jointly administered by the United States and each of the separate states. Individual state Medicaid programs are administered by each individual state, subject to oversight by the United States in accordance with statutes and regulations promulgated by the United States and the Secretary of the Department of Health and Human Services. In accordance with these statutes and regulations, the United States provides financial assistance to each of the state Medicaid programs by providing each state with financing equal to at least fifty percent of the costs incurred by the state Medicaid programs. In some instances, the United States provides financing equal to as much as seventy-five percent of

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1    each programs costs incurred, including the costs incurred for reimbursing

2    providers for dispensing prescription drug products (including Lovenox®), to

3    Medicaid beneficiaries.  Each state Medicaid program obtains federal financial

4    assistance by submitting quarterly claims to the United States for federal financial

5    assistance related to the costs incurred for administering the state Medicaid

6    programs.

7

8        36.    Aventis fraudulently held the exclusive right to sell enoxaparin in the

9    United States, including to state governments and Medicare and Medicaid

10   providers who would seek reimbursement for dispensing enoxaparin, from the

11   issuance of its fraudulently-obtained United States patent until that patent was

12   deemed unenforceable by the Central District of California and affirmed by the

13   Federal Circuit on May 14, 2008.

14

15       37.    Using its fraudulently-obtained patent rights, Aventis submitted false

16   claims or caused false claims to be submitted to the United States and state

17   governments alleged herein, either through direct sales of enoxaparin or false claim

18   for reimbursement of enoxaparin submitted to the Medicare and Medicaid

19   programs.  Aventis submitted false claims or caused false claims to be submitted to

20   the United States and state governments alleged herein based upon unlawful

21   pricing well beyond the fair market value of enoxaparin—pricing made possible by

22   Aventis's unlawfully-obtained exclusive market position.  Aventis submitted

23   claims or caused claims to be submitted with a false certification of compliance

24   with the law, and the United States and state governments alleged herein

25   conditioned payment of those claims upon that false certification.  Unaware of the

26   fraud on the Patent Office and FDA and the falsity of the claims, the United States

27   and state governments alleged herein issued payment on those false claims.

28

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

38.    From Aventis's launch of Lovenox® in 1993 until generic entry into the enoxaparin market in 2010, Aventis was the only source for enoxaparin sodium in the United States.

39.    IMS Health ("IMS") is a well-known reliable provider of information, services and technology for the healthcare industry.  IMS compiles certain pricing and sales data from pharmaceutical companies, drug manufacturers, wholesalers, retailers, pharmacies, hospitals, managed care providers, and long-term care facilities, and then provides that information to its drug company and other subscribers.  Established in 1954, IMS's long-term reputation has made it an industry standard.

40.    Data reported by IMS relating to the sale of enoxaparin from 1993 until generic entry into the enoxaparin market in 2010 would have come from Aventis or from wholesalers who bought directly from Aventis.

41.    IMS reports that from 1993 until 2002, the United States purchased 6,298,000 units of Lovenox® from Aventis or Aventis's distributors for use at federal facilities totaling $102,655,000.00.  IMS also reports that from 2003 until the third quarter of 2012, the government purchased 22,497,000 units of Lovenox® from Aventis or Aventis's distributors for use at federal facilities totaling $470,559,000.00.  These data, which originated from Aventis or distributors that purchased directly from Aventis, shows that Aventis submitted or caused to be submitted false claims to United States government federal facilities and hospitals between 1993 to 2010 and that the United States federal government paid false claims totaling at least $573,214,000.00.

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

42. Aventis either directly or implicitly certified that it was providing a fair and reasonable price for its enoxaparin sold to the United States federal facilities and hospitals.

43. Aventis's false statements or certifications are integral parts of the causal chain that led to the payment by the United States and state governments alleged herein of illegally-inflated claims for enoxaparin.

44. The Centers for Medicare & Medicaid Services ("CMS"), previously known as the Health Care Financing Administration ("HCFA"), is a federal agency within the United States Department of Health and Human Services ("DHHS") charged with administering the Medicare program and working in partnership with state governments alleged herein to administer the Medicaid program, the State Children's Health Insurance Program ("SCHIP"), and health insurance portability standards.

45. In connection with the Medicaid Drug Rebate Program, CMA compiles and makes publicly available drug utilization data for covered outpatient drugs paid for by state Medicaid agencies. The federal Medicaid statute, 42 U.S.C. § 1396r-8(b)(2)(A), obliges states to submit drug rebate utilization data to CMS within sixty days of the end of each quarter. CMS stores the utilization data in the Medicaid Drug Rebate system and periodically posts the data on the CMS website. The data identify the state in which the medication was dispensed, the number of units, number of prescriptions, and the total amount reimbursed for each National Drug Code ("NDC") on a quarterly basis.

46. CMS tracks claims paid by state Medicaid programs for specific drugs, including enoxaparin. According to CMS, from 1993 through 2010, at least

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

2,000,000 false claims for reimbursement for at least 29,000,000 units of Lovenox® were submitted to the state governments alleged herein for reimbursement.  The governments paid at least $1.1 billion ($1,100,000,000.00) on those false claims.

47.     Further, the United States has purchased or reimbursed claims through Medicare for a substantial amount of money in the United States since 1993.  The specific data reflecting the payments or reimbursements made under Medicare, the federal health insurance program for individuals who are sixty-five or older, certain younger individuals with disabilities, and people with End Stage Renal Disease, is not readily available through CMS.  Such data for Lovenox® could easily be obtained through discovery in this case.

48.     Since Aventis's fraudulently-obtained patent was held unenforceable, two manufacturers of generic enoxaparin have entered the enoxaparin market in the United States.  Sandoz, Inc. entered the enoxaparin market in July 2010, and Amphastar entered the market in January 2012.

49.     Since the introduction of generic competition into the enoxaparin market, the price of enoxaparin has dropped significantly from the illegally-inflated pricing charged by Aventis during the term of its illegal monopoly.  Now that Aventis's fraudulently-obtained patent has been held unenforceable by the courts because of Aventis's inequitable conduct—and that the FDA has denied Aventis's deceptive citizen petitions to block generic entry into the enoxaparin market—the United States and state governments alleged herein are no longer paying the high prices charged by Aventis.  Since the entry of generic competition into the enoxaparin market in the United States, the United States and state

-15-

1    governments alleged herein are paying at least half of the original illegally-inflated

2    prices charged by Aventis.

3

4                              **Count 1**

5                   **False Claims Act, 31 U.S.C. § 3729, *et seq.***

6        50.    Each of the numerical paragraphs both above and in the following

7    counts is incorporated herein by reference.

8

9        51.    On information and belief, through Aventis's illegal monopoly and

10   fraud, Aventis has knowingly presented or caused to be presented to the

11   government a false claim, false record or statement, such that the government was

12   billed—and is currently being billed—for a significantly higher price than it should

13   have been.  Aventis's fraud has caused false certifications from the United States

14   Patent Office in the form of the patent grant and delayed FDA approval of generic

15   equivalents.

16

17       52.    On information and belief, Aventis's fraud on the PTO and the FDA

18   permitted Aventis to bill for an approved, higher-priced or defectively priced, good

19   (a patented drug, Lovenox®) than what was actually provided (in essence, a non-

20   patented drug, enoxaparin).  On information and belief, the governments alleged

21   herein paid the price they actually contracted to pay, but would not have entered

22   the contracts had they known the true facts at the time of contracting.  The United

23   States and state governments alleged herein would not have accepted nor made

24   payments on invoices for patented Lovenox® but for the fraudulently-obtained

25   patent.

26

27                              **Count 2**

28                   **California False Claim Act**

-16-

53.     Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

54.     On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the California's False Claims Act. CAL. GOV'T CODE §§ 12650-12655.

55.     Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to CAL. GOV'T CODE § 12652(c)(1).

## Count 3
## Delaware False Claims and Reporting Act

56.     Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

57.     On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Delaware False Claims and Reporting Act. DEL. CODE §§ 1201-1209.

58.     Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to DEL. CODE § 1203(b).

## Count 4
## District of Columbia False Claims Law

59.     Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1    60.    On information and belief, Amphastar hereby alleges that the actions

2    of Aventis alleged herein constitute violations of the District of Columbia False

3    Claims Law.  D.C. CODE §§ 2-308.13-20.

4

5    61.    Amphastar has standing as a *qui tam* relator to bring this cause of

6    action on behalf of the state pursuant to D.C. CODE § 2-308.15(b)(1).

7

8                              **Count 5**

9                       **Florida False Claims Act**

10    62.    Each of the numerical paragraphs both above and in the following

11    counts is incorporated herein by reference.

12

13    63.    On information and belief, Amphastar hereby alleges that the actions

14    of Aventis alleged herein constitute violations of the Florida False Claims Act.

15    FLA. STAT. §§ 68.081-.09.

16

17    64.    Amphastar has standing as a *qui tam* relator to bring this cause of

18    action on behalf of the state pursuant to FLA. STAT. § 68.083.

19

20                              **Count 6**

21                 **Georgia State False Medicaid Claims Act**

22    65.    Each of the numerical paragraphs both above and in the following

23    counts is incorporated herein by reference.

24

25    66.    On information and belief, Amphastar hereby alleges that the actions

26    of Aventis alleged herein constitute violations of the Georgia State False Medicaid

27    Claims Act.  GA. CODE ANN. § 49-4-168.

28

-18-

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

67.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to GA. CODE ANN. § 49-4-168.2.

## Count 7

### Hawaii False Claims Acts

68.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

69.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Hawaii False Claims Act. HAW. REV. STAT. §§ 661-21 through 29.

70.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to HAW. REV. STAT. § 661-25.

## Count 8

### Illinois Whistleblower Reward and Protection Act

71.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

72.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Illinois Whistleblower Reward and Protection Act.  740 ILL. COMP. STAT. 175/1.

73.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to 740 ILL. COMP. STAT 175/4(b).

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

## Count 9

### Indiana False Claims and Whistleblower Protection Act

74.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

75.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of Indiana False Claims and Whistleblower Protection Act.  IND. CODE § 5-11-5.5-1.

76.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to IND. CODE § 5-11-5.5-4.

## Count 10

### Louisiana Medical Assistance Programs Integrity Law

77.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

78.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Louisiana Medical Assistance Programs Integrity Law.  LA. REV. STAT. ANN. §§ 46:437.1-440.3.

79.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to LA. REV. STAT. ANN. § 46:439.1.

## Count 11

### Massachusetts False Claims Law

80.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

81.     On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Massachusetts False Claims Law. MASS. GEN. LAWS ANN. ch. 12, § 5.

82.     Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the commonwealth pursuant to MASS. GEN. LAWS ANN. ch. 12, § 5C(2).

### Count 12

### Michigan Medicaid False Claim Act

83.     Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

84.     On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Michigan Medicaid False Claims Act. MICH. COMP. LAW SERV. §§ 400.601-.613.

85.     Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to MICH. COMP. LAW SERV. § 400.610a.

### Count 13

### Montana False Claims Act

86.     Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

87. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Montana False Claims Act. MONT. CODE ANN. §§ 17-8-401 to -412.

88. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to MONT. CODE ANN. § 17-8-406.

## Count 14
## Nevada False Claims Act

89. Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

90. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Nevada False Claims Act. NEV. REV. STAT. ANN. §§ 357.010-.250.

91. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to NEV. REV. STAT. ANN. § 357.080.

## Count 15
## New Hampshire Health Care False Claims Law

92. Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

93. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the New Hampshire Health Care False Claims Law. N.H. REV. STAT. ANN. §§ 167:58 to 62.

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

94. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to N.H. REV. STAT. ANN. § 167:61-b.

## Count 16
### New Jersey False Claims Act

95. Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

96. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the New Jersey False Claims Act. N.J. STAT. ANN. §§ 2A:32C-1 to -17.

97. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to N.J. STAT. ANN. §§ 2A:32C-5.

## Count 17
### New Mexico Medicaid False Claims Act

98. Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

99. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the New Mexico Medicaid False Claims Act. N.M. STAT. ANN. §§ 27-14-1 to -10.

100. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to N.M. STAT. ANN. §§ 27-14-8.

**Count 18**

**<u>New Mexico Fraud Against Taxpayers Act</u>**

101.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

102.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the New Mexico Fraud Against Taxpayers Act.  N.M. STAT. ANN. §§ 44-9-1 to -10.

103.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to N.M. STAT. ANN. § 44-9-5.

**Count 19**

**<u>New York False Claims Act</u>**

104.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

105.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the New York False Claims Act. N.Y. STATE FIN. LAW §§ 187-194.

106.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to N.Y. STATE FIN. LAW § 190(2).

**Count 20**

**<u>Oklahoma Medicaid False Claims Act</u>**

107.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

-24-

108.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Oklahoma Medicaid False Claims Act. OKLA. STAT. tit. 63, §§ 5053-5053.6.

109.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to OKLA. STAT. tit. 63, § 5053.3.

## Count 21

### Rhode Island State False Claims Act

110.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

111.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of Rhode Island State False Claims Act. R. I. GEN. LAWS §§ 9-1.1-1 to -8.

112.   Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to R. I. GEN. LAWS § 9-1.1-4(b).

## Count 22

### Tennessee False Claims Act

113.   Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

114.   On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Tennessee False Claims Act. TENN. CODE ANN. §§ 4-18-101 to -108.

115. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to TENN. CODE ANN. § 4-18-104(c).

## Count 23

### Tennessee Medicaid False Claims Act

116. Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

117. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Tennessee Medicaid False Claims Act. TENN. CODE ANN. §§ 71-5-181 to -185.

118. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to TENN. CODE ANN. § 71-5-183.

## Count 24

### Texas Medicaid Fraud Prevention Law

119. Each of the numerical paragraphs both above and in the following counts is incorporated herein by reference.

120. On information and belief, Amphastar hereby alleges that the actions of Aventis alleged herein constitute violations of the Texas Medicaid Fraud Prevention Law. TEX. HUM. RES. CODE ANN. §§ 36.001-36.117.

121. Amphastar has standing as a *qui tam* relator to bring this cause of action on behalf of the state pursuant to TEX. HUM. RES. CODE ANN § 36.101.

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1

## Count 25

## <u>Virginia Fraud Against Taxpayers Act</u>

3   122.   Each of the numerical paragraphs both above and in the following
4   counts is incorporated herein by reference.

6   123.   On information and belief, Amphastar hereby alleges that the actions
7   of Aventis alleged herein constitute violations of the Virginia Fraud Against
8   Taxpayers Act.  VA. CODE. ANN. §§ 8.01-216.1 through 8.01-216.19.

10   124.   Amphastar has standing as a *qui tam* relator to bring this cause of
11   action on behalf of the state pursuant to VA. CODE. ANN. § 8.01-216.5(a).

## Count 26

## <u>Wisconsin False Claims For Medical Assistance Act</u>

15   125.   Each of the numerical paragraphs both above and in the following
16   counts is incorporated herein by reference.

18   126.   On information and belief, Amphastar hereby alleges that the actions
19   of Aventis alleged herein constitute violations of the Wisconsin False Claims for
20   Medical Assistance Act.  WIS. STAT. § 20.931.

22   127.   Amphastar has standing as a *qui tam* relator to bring this cause of
23   action on behalf of the state pursuant to WIS. STAT. § 20.931(5)(a).

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

1

## **PRAYER FOR RELIEF**

2    WHEREFORE, Amphastar prays for the following:

3    A.    An award of damages to the United States and state governments

4 alleged herein in the amount of three times the damages sustained as a result of the

5 false claims and fraud alleged herein, with statutorily appropriate portions awarded

6 to Relator Amphastar;

7    B.    Disgorgement of Defendants' profits unjustly obtained from the

8 United States and state governments alleged herein;

9    C.    The imposition of civil penalties against Defendants for each and

10 every false or fraudulent claim presented by, on behalf of, or for the benefit of

11 defendants to any agency of the United States and state governments alleged

12 herein;

13    D.    Interest and Costs;

14    E.    Attorneys fees as allowed by law; and

15    F.    Such further relief as this Court may deem just and equitable.

16

17    DATED: November 30, 2012        Respectfully submitted,

18                             K&L GATES LLP

19                             By:

20                             Jan P. Weir
                               Joseph J. Mellema

21                             Taylor C. Foss
                             Jennifer A. Mauri

22

23                             Attorneys For Relator
                             Amphastar Pharmaceuticals, Inc.

24

25

26

27

28

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

## DEMAND FOR JURY TRIAL

Pursuant to FED. R. CIV. P. 38, Plaintiffs and the Relator Amphastar, hereby demand a trial by jury on its Claims.

DATED: November 30, 2012

Respectfully submitted,

K&L GATES LLP

By: _____
Jan P. Weir
Joseph J. Mellema
Taylor C. Foss
Jennifer A. Mauri

Attorneys For Relator
Amphastar Pharmaceuticals, Inc.

-29-

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

**CERTIFICATE OF SERVICE**

Amphastar Pharmaceuticals, Inc. v. Aventis Pharma S.A. et al.

Case No. EDCV 09-0023 MJG (OPx)

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction service was made. My business address is 1 Park Plaza, 12th Floor, Irvine, CA 92614.

**BY MAIL:** On November 30, 2012, I caused such envelope(s) to be deposited in the mail at Santa Ana, California with postage thereon fully prepaid to the office of the addressee(s) as indicated above. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

**BY ELECTRONIC MAIL:** I am personally and readily familiar with the business practice of the firm for the preparation and processing of documents in portable document format (PDF) for e-mailing. I prepared said document(s) in PDF and then caused such documents to be served by electronic mail to the below addressees on November 30, 2012.

| | |
|---|---|
| **Linda A Kontos**<br>AUSA - Office of the US Attorney<br>Civil Division<br>300 North Los Angeles Street Room 7516<br>Los Angeles, CA 90012<br>linda.kontos@usdoj.gov<br>213-894-3986 | Attorney for U.S. DOJ United States of America |
| **Richard Nicholson**<br>AUSA - Office of US Attorney<br>Civil Division<br>Patrick Henry Building, Room 9928<br>601 D St., NW<br>Washington, DC 20004<br>richard.nicholson@usdoj.gov<br>202-616-0345 | Attorney for U.S. DOJ United States of America |

-30-

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS

| **Susan Hershman** | Attorney for U.S. DOJ United |
|---|---|
| AUSA - Office of US Attorney | States of America |
| Civil Division | |
| 300 North Los Angeles Street Room 7516 | |
| Los Angeles, CA 90012 | |
| susan.hershman@usdoj.gov | |
| 213-894-5709 | |
| **M Sean Royall** | Attorney Defendants for Aventis |
| Gibson Dunn & Crutcher LLP | Pharma S.A., Aventis |
| 2100 McKinney Avenue Suite 1100 | Pharmaceuticals Inc, and Sanofi- |
| Dallas, TX 75201-6912 | Aventis SA |
| sroyall@gibsondunn.com | |
| 214-698-3256 | |

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 30, 2012, at Irvine, California.

Debbie D. Dean-Cross

AMENDED COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACTS