IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

AMPHASTAR PHARMACEUTICALS INC.     *

              Plaintiff         *

          vs.                   *   EDCV-09-0023 MJG

AVENTIS PHARMA SA, et al.          *

             Defendants        *

*        *        *        *        *        *        *        *        *

MEMORANDUM & ORDER AWARDING FEES

The Court has before it Aventis's Application For Entitlement to Fees and Expenses Under 31 U.S.C. § 3730(d)(4) [ECF No. 519-1] and the materials submitted relating thereto. The Court has considered the materials submitted by the parties, and finds no need for a hearing on the instant motion.


I.   INTRODUCTION

The Court dismissed this qui tam case for lack of jurisdiction because Plaintiff-Relator, Amphastar Pharmaceuticals Inc. ("Amphastar"), failed to prove it was an "original source" of the publicly-disclosed information on which the suit was based, pursuant to 31 U.S.C. § 3730(e)(4)(A). Superseding Decision Re: Jurisdiction 45, ECF No. 380. The Court also held that, by virtue of then-existing precedent, it was

unable to award Defendant, Aventis Pharma SA ("Aventis")[1], its attorneys' fees pursuant to 31 U.S.C. § 3730(d)(4).  Id. at 42. The Court awarded Aventis its "just costs" pursuant to 28 U.S.C. § 1919.  Id. at 44, 45.

Amphastar appealed from the Court's decision, Aventis cross-appealed, and on May 11, 2017, the United States Court of Appeals for the Ninth Circuit affirmed the Court's dismissal of Amphastar's claims.  Amphastar Pharm., Inc. v. Aventis Pharma SA, 856 F.3d 696 (9th Cir. 2017)(Amphastar Appeal). The appellate Court reversed the denial of a legal fee award and remanded the case for further proceedings on the legal fee award issues stating that the "district court may award attorneys' fees to Aventis if it determines that Amphastar's claim 'was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.'" Id. at 711 (citing § 3730(d)(4)).

For reasons as stated herein, the Court finds that Amphastar's claim was clearly frivolous and exercises its discretion to award attorneys' fees to Aventis.

---

[1]     Defendants, Aventis Pharma S.A. (a French corporation) and Aventis Pharmaceuticals, Inc. (the American subsidiary), merged with and into Sanofi-Aventis S.A., which is the surviving company.  For purposes of this memorandum, Defendants are referred to collectively as "Aventis."

I.   <u>LEGAL STANDARD</u>

The False Claims Act ("FCA") authorizes persons, referred to as "relators," to bring civil actions, known as "<u>qui tam</u> actions," on behalf of the United States government. 31 U.S.C. § 3730(b)(1).  The FCA contains a fee-shifting provision, which allows prevailing defendants reasonable attorneys' fees:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4).

The Ninth Circuit has stated:

> This standard tracks our formulation as to when fees are appropriate under 42 U.S.C. § 1988 to a prevailing defendant. "A court may grant attorney's fees to a defendant under § 1988 only under the limited circumstances where the action is frivolous, unreasonable, or without foundation."  As such, § 1988 cases are instructive in deciding whether fees are appropriate under the False Claims Act.[2]

---

[2]   The False Claims Act's legislative history also indicates that Congress viewed the § 1988 standard as analogous. <u>See</u> S.Rep. No. 99-345, at 29 ("[The False Claims Act] standard reflects that which is found in § 1988 ..."), reprinted in 1986 U.S.C.C.A.N. 5266, 5294.

Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005-06 (9th Cir. 2002) (quoting Maag v. Wessler, 993 F.2d 718, 719 (9th Cir. 1993))(footnote in original).

Under Ninth Circuit precedent, "[a]n action is 'clearly frivolous' when 'the result is obvious or the [plaintiff's] arguments [] are wholly without merit.'" Id. at 1006 (quoting Vernon v. City of L.A., 27 F.3d 1385, 1402 (9th Cir. 1994)). This standard is met if "the plaintiff continued to litigate after" his claim "clearly became" groundless or without foundation. Hughes v. Rowe, 449 U.S. 5, 15 (1980).

An action is "clearly vexatious" or "brought primarily for purposes of harassment" when the plaintiff "pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." Pfingston, 284 F.3d at 1006. However, even where the FCA claim was clearly frivolous, or vexatious, or primarily harassing in nature, an award is not mandatory, but within the district court's discretion. See id. at 1006-07.

Additionally, "it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421-22 (1978). But "if a plaintiff is found to have brought or

continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." Id. at 422.  As the Ninth Circuit has observed, the whistleblower incentive and the attorneys' fee provision work in tandem, providing a balance between the incentive to bring suit and the award of attorneys' fees to prevailing defendants for suits improperly pursued.  United States ex rel. Barajas v. Northrop Corp., 5 F.3d 407, 410 n.9 (9th Cir. 1993).

II.  DISCUSSION

A.  Background[3]

At all times relevant hereto, Amphastar and Aventis have been competitors in the pharmaceutical industry.  In the 1980's, Aventis obtained a French patent relating to mixtures of low molecular weight heparin.  Aventis then filed related applications in the European Patent office and the United States Patent and Trademark Office ("USPTO").  The USPTO application

---

[3]    The facts underlying this litigation have been set forth in prior opinions, but a discussion of the factual and procedural background will provide relevant context for the instant determination.  A more detailed factual background can be found in the decision of this Court dismissing the claim due to the failure of Amphastar to establish jurisdiction [ECF No. 380] and the decision of the United States Court of Appeals for the Ninth Circuit affirming the dismissal, Amphastar Appeal, 856 F.3d 696.

was abandoned, and the European patent was issued but later
revoked after the filing of an opposition.

    In 1991, Aventis filed a patent application in the USPTO
for a low molecular weight heparin, and also filed a New Drug
Application ("NDA") with the Food and Drug Administration
("FDA") to obtain United States marketing approval for the drug,
referred to as enoxaparin.  The patent application resulted in
the 1995 issuance of United States Patent No. 5,318,618 ("the
'618 Patent").  Aventis listed the '618 Patent in the FDA Orange
Book[4] and sold the enoxaparin drug under the brand name Lovenox®.

    Amphastar was founded in 1999 by its President, Yong Feng
Zhang ("Zhang") and his wife.  Zhang sought to find a branded
pharmaceutical on which to base a generic product, and decided
that enoxaparin, then being produced by Aventis, was a good
prospect because they could develop the product using the
disclosure in the revoked European patent.  Amphastar began
development of a generic enoxaparin in 2000.  In March 2003,
Amphastar filed an Abbreviated New Drug Application ("ANDA")
with the FDA, requesting the right to manufacture and sell a
generic version of enoxaparin in competition with Aventis, and

---

[4]     An NDA must include the patent numbers and the expiration
dates of any patents which claim the drug and methods of using
the drug.  After approval, these patents are listed in a
publication commonly known as the "Orange Book."  Patents listed
in the Orange Book are known as "brand-name" drugs.

claiming that Aventis' pertinent patents were invalid, unenforceable, or not infringed by Amphastar's product.[5]

On August 4, 2003, Aventis sued Amphastar, and another generic manufacturer, Teva Pharmaceuticals USA, Inc. ("Teva"), alleging infringement of the '618 Patent by virtue of the ANDA applications they had filed.  Civil No. 03-0887 MRP filed August 4, 2003 ("the Infringement Suit").  This filing triggered the 30-month stay on FDA approval of Amphastar's ANDA.  Amphastar answered the Infringement Suit complaint with defenses of invalidity and non-infringement.  In October 2003, Teva – not Amphastar - first raised the potential defense of inequitable conduct.  It was not until June 2004, after discovery in the Infringement Suit had been underway, that Amphastar filed a Motion for Leave (After the Fact) to File its Amended Answer and Counterclaims for inequitable conduct and for violation of antitrust laws.

In July 2004, Amphastar moved for summary judgment on inequitable conduct based on errors in Example 6 in the '618

---

[5]     When an ANDA applicant makes a certification of invalidity, unenforceability, or noninfringement, this action constitutes a constructive act of infringement, which gives the patent holder standing to sue within 45 days after notice.  Filing suit prevents the FDA from approving the ANDA for 30 months from the notice date.  Unlike an ordinary infringement suit, this type of infringement suit bars the FDA from approving an ANDA, thereby excluding the would-be entrant from the market.  This consequence frequently engenders antitrust claims.

Patent, which had distinguished the low molecular weight heparin produced by the alleged invention as having a longer plasma half-life than prior art.[6]  Amphastar was granted summary judgment on its affirmative defense and counterclaim of inequitable conduct, and the antitrust counterclaim was stayed pending appeal of the infringement claim dismissal.  Aventis Pharma S.A. v. Amphastar Pharm., Inc., 390 F. Supp. 2d 952 (C.D. Cal. 2005).  Ultimately, the invalidity-holding decision was affirmed by the Federal Circuit,[7] and the '618 Patent was held unenforceable.  Aventis Pharma S.A. v. Amphastar Pharm., Inc., 525 F.3d 1334 (Fed. Cir. 2008).

Thereafter, the stay of the antitrust counterclaim was lifted.  In January 2009, Aventis successfully moved to dismiss

---

[6]  The data presented in Example 6 did not include complete dosage information.  Aventis had initiated reissue proceedings in May 2003 for the '618 Patent and disclosed to the USPTO that there were minor errors in Example 6.  A second disclosure indicating several errors in Example 6 was made in November 2003 as part of the reissue proceedings.  The USPTO ultimately reissued the patent in June 2005 with Example 6 omitted and after considering the '618 Patent's validity in light of the European patent prior art.

[7]  The Federal Circuit stated: "we cannot agree that the district court clearly erred by not concluding that Dr. Uzan's failure to disclose the dosage information was due to mere inadvertence." Aventis Pharma S.A. v. Amphastar Pharm., Inc., 525 F.3d 1334, 1349 (Fed. Cir. 2008).  Aventis continues to argue that the inequitable conduct finding was in error and that inequitable conduct would not be found under today's standard.

the antitrust claims,[8] and Amphastar commenced the instant

litigation by filing the sealed qui tam Complaint under the

False Claims Act.  In the instant case, Amphastar claims that

Aventis' Example 6 misrepresentations to the USPTO, which

resulted in the patent being declared unenforceable, meant that

Aventis had filed false claims charging excessive prices for

enoxaparin as a brand-name drug to the United States ("the

Government") and several States.  This theory was, itself,

academically recognized as of questionable validity.[9] In October

2011, the Government and the States declined to intervene in the

case.  On October 28, 2011, the Complaint was unsealed, and

Amphastar elected to proceed with the case on its own pursuant

to 31 U.S.C. § 3730(c)(3).

---

[8]     In February 2009, Aventis's motion to dismiss the antitrust
counterclaim was granted because the antitrust allegations that
survived Noerr-Pennington immunity failed to allege antitrust
injury, a necessary element.  Aventis v. Amphastar, No. 03-cv-
0887 (C.D. Cal. May 15, 2009).
[9]     See Gregory Michael, William Newsom, & Matthew Avery, The
New Plague: False Claims Liability Based on Inequitable Conduct
During Patent Prosecution, 25 Fordham Intell. Prop. Media & Ent.
L.J. 747, 749-51 (2015)("Amphastar's FCA suit was based on the
novel theory that Aventis defrauded the government when it
fraudulently acquired its patent by engaging in inequitable
conduct while prosecuting its patent application before the
United States Patent and Trademark Office ("USPTO"). . . .  This
lawsuit is currently being litigated and it is unclear whether
Amphastar's theory of FCA liability based on inequitable conduct
is even valid, let alone whether Amphastar will prevail.
(footnotes omitted)).

Aventis sought dismissal of the Complaint for, _inter alia_,[10] lack of subject matter jurisdiction because Amphastar's allegations were based on publicly-disclosed information, and Amphastar was not an "original source"[11] of the information. The Court found that the alleged false statements to the USPTO had been publicly disclosed in the public record filings in the Infringement Suit.  Mem. 19, ECF No. 78.  The Court held that Amphastar's allegations that it was an "original source," assumed to be true, were adequate to avoid dismissal but did not definitively resolve the "original source" issue.[12]  Rather, resolution required determination of factual disputes based upon an evidentiary hearing.

After a period of discovery related to original source issues, Aventis again sought dismissal, asserting that Amphastar

---

[10]   Aventis also argued that Amphastar's FCA claims were based on alleged antitrust violations, which were not properly pleaded and were precluded by the dismissal of the antitrust claims in the earlier lawsuit.  The Court found this argument unavailing because Amphastar was pleading an FCA claim, not an antitrust claim.

[11]   "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A)(2006 ed.).

[12]   The Court also held that Amphastar had failed to plead the filing of false claims with particularity but granted Amphastar leave to amend the Complaint.  The Amended Complaint contained allegations sufficient to present a plausible claim and survived a second motion to dismiss.

had not made an adequate pre-filing disclosure by pre-filing letter to the Government and did not have knowledge independent of, or materially adding to, the publicly-disclosed information on which the suit was based.  By Order issued May 12, 2014 [ECF No. 245], the Court denied dismissal based on the alleged inadequacy of Amphastar's pre-filing letter to the Government stating, "Although the Court has serious doubts about the issue, it concludes that the Ninth Circuit would not hold the notice letter – minimal though it is – insufficient to satisfy the pre-filing disclosure requirement of the FCA."  The Court did, however, certify the question for interlocutory appeal [ECF No. 262]. The Ninth Circuit accepted and proceeded with the appeal but did not address the merits of the pre-filing notice matter when affirming the Court's dismissal of the case on other grounds.[13]

An evidentiary hearing to resolve the "original source" issue was held July 7-10, 2014.  At the hearing, Amphastar sought to prove that it had the requisite independent knowledge of the errors in Example 6 by virtue of experimentation allegedly carried out by its employees.  Amphastar did not meet its burden for a number of reasons, including the lack of credibility of its key witness and inconsistent prior

---

[13]     _Amphastar Appeal_, 856 F.3d at 708 n.13.

statements.[14]   The Court awarded costs to Aventis under 28 U.S.C. § 1919, but held that it lacked the ability to award attorneys' fees because, based on then existing precedent, Aventis was not a "prevailing party" since the case was dismissed for lack of jurisdiction.

On appeal, the Ninth Circuit affirmed the Court's dismissal of Amphastar's qui tam suit for lack of jurisdiction, stating that Amphastar did "not come close" to meeting its burden to establish that it was an original source who could invoke the court's jurisdiction.[15]  Amphastar Appeal, 856 F.3d at 708.  The Ninth Circuit found the precedential situation regarding a fee award had changed, remanding the case for resolution of the attorneys' fees issue, stating:

> We are persuaded that the district
> court had subject matter jurisdiction over
> the attorneys' fees issue and that Aventis

---

[14]   "As discussed in detail in the decision dismissing the claim due [ECF No. 380], Amphastar failed to provide documentation or verification regarding the purported experimentation results, had problems with the documentation that did exist, and gave testimony that the Court found not credible."  Amphastar Appeal, 856 F.3d at 708.

[15]   The Ninth Circuit court stated: "Even if the 'copying' theory were excluded [from the evidence], the record would still contain all of the other factual findings that indicate Amphastar lacked direct and independent knowledge. The inconsistencies, the notebooks, Zhang's lack of credibility—all would remain. Amphastar would still bear the burden of prevailing on the jurisdictional bar issue. It has not come close to doing so." Amphastar Appeal, 856 F.3d at 708 (citation omitted).

> is the prevailing party. As such, the district court may award attorneys' fees to Aventis if it determines that Amphastar's claim "was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."

<u>Id.</u> at 711 (quoting § 3730(d)(4)).

By the instant motion, Aventis seeks a determination from this Court that it should recover its reasonable fees, expenses, and other costs from Amphastar under the fee-shifting provision of the FCA, from the time of the unsealing of the Complaint to the final disposition of the suit.

B.  <u>Frivolous Claim</u>

Although a court may award attorneys' fees if any of the three conditions are present,[16] the criteria are related and evidence regarding frivolousness will also be relevant to the existence of any improper purpose.  Both Amphastar and Aventis contend that, notwithstanding the disjunctive use of "or" in the statute, a fee award under the FCA likely requires a finding that the claim was frivolous, citing as authority <u>C.W. v.</u>

---

[16]  <u>See</u> <u>Mikes v. Straus</u>, 274 F.3d 687, 704-05 (2d Cir. 2001) <u>abrogated by</u> <u>Universal Health Servs., Inc. v. United States</u>, 136 S. Ct. 1989 (2016).

<u>Capistrano Unified Sch. Dist.</u>, 784 F.3d 1237, 1248 (9th Cir. 2015).[17]

    While it is exceptional to find that a claim is frivolous, "[c]ourts have awarded attorney's fees where the plaintiff's <u>qui tam</u> fraud claim was based on publicly disclosed information of which the plaintiff was not the original source." <u>United States ex rel. Woodruff v. Hawaii Pac. Health</u>, No. CIV.05-00521JMS/LEK, 2009 WL 734057, at *8 (D. Haw. Mar. 18, 2009) (citing cases); <u>see also</u> <u>In re Nat. Gas Royalties Qui Tam Litig.</u>, No. 99-MD-1293-WFD, 2011 WL 12854134, at *12 (D. Wyo. July 22, 2011), <u>aff'd,</u> 845 F.3d 1010 (10th Cir. 2017) ("[S]ubsequent case law has made clear that a claim may be 'clearly frivolous' within the meaning of § 3730(d)(4) where the relator's status as an

---

[17]    <u>Capistrano</u> is a case brought by parents of a disabled student against a school district under the Individuals with Disabilities in Education Act ("IDEA").  The IDEA's fee-shifting statute has two parts: the first part allows defendants to recover against the parent's attorney if a claim is frivolous (under the <u>Christiansburg</u> standard), and the second part allows a prevailing party to recover against the parents or the parent's attorney if the claim was brought for an improper purpose (under a Rule 11 standard).  784 F.3d at 1244-45.  The Court is not convinced that the FCA fee-shifting statute tracks this particular standard.  The circumstances in a FCA case are not analogous to an IDEA case.  <u>See, e.g.</u>, <u>R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.</u>, 631 F.3d 1117, 1126-27 (9th Cir. 2011)("Collecting against parents requires a showing of both frivolousness and an improper purpose, while collecting against their attorneys requires only a showing of frivolousness.").  Under the FCA fee-shifting provision, fees can only be awarded against the plaintiff, but not against the attorney.  <u>Pfingston</u>, 284 F.3d at 1006.

original source is wholly lacking in evidentiary support."). The Court finds that the instant case is one of the exceptional cases where the plaintiff's arguments were "wholly without merit," Pfingston, 284 F.3d at 1006, and clearly had no reasonable chance of success.

In denying Aventis' motions to dismiss at the pleading stage, the Court relied on Amphastar's representations that it had direct and independent knowledge sufficient to qualify as an original source.  However, it became clear at the evidentiary hearing that not only was there no factual support for Amphastar's contentions, but also that Amphastar knew, or should have known, that it was not an "original source" when it decided to proceed with the case.

Amphastar's counsel's statements in prior related litigation, and to the Government in the instant case, make it clear that Amphastar learned of Aventis' false statements in Example 6 during discovery in the prior litigation and not through its own independent experimentation.  For example:

- In the Infringement Suit, Amphastar initially asserted a non-infringement defense.  Teva was the first to raise the potential defense of inequitable conduct in October 2003.  It was not until June 2004 that Amphastar sought leave of the ANDA court to assert a counterclaim for inequitable conduct.  In its notice of motion, Amphastar stated that its motion was "based on facts recently developed in this litigation . . . ."  Defs.' Ex. 14.  These "newly developed facts," id., included an allegation that Example 6 of the '618

patent application omitted material information.  <u>See</u>
Defs.' Ex. 13 ¶ 18.

- Also in the Infringement Suit, in Amphastar's response
to Aventis' motion to strike the amended answer and
counterclaim, Amphastar stated that "<u>all of the facts
and evidence upon which this affirmative defense is
based are in the possession and control of Aventis</u>."
Defs.' Ex. 15.  Amphastar listed the evidence as
including "Aventis' recent PTO filings in a proceeding
seeking reissuance of the '618 patent, which filings
admit inaccuracies in the original prosecution of the
patent."  <u>Id.</u>  Further, Amphastar stated that it "did
not include the newly [sic] inequitable conduct
defense . . . in its original answer and counterclaim
because it needed to gather and analyze evidence to
support such claims."  <u>Id.</u>  It referred to "new or
corroborating evidence . . . discovered late in the
proceedings."  <u>Id.</u>  These statements were clearly
inconsistent with Amphastar's contention that it knew
that Example 6 was false based on its employees'
numerous experiments between December 2001 and March
2003 prior to its ANDA filing.

- In its December 31, 2008 pre-filing letter to the
Government in the instant case, Amphastar represented
that "[d]uring Amphastar's litigation against Aventis,
<u>Amphastar discovered that Aventis has committed frauds</u>
against both the United States Patent & Trademark
office and the United States Food & Drug
Administration. . . ."  This statement is clearly
inconsistent with Amphastar's contention that it had
direct and independent knowledge of Aventis' fraud
prior to Amphastar's ANDA filing.

- Testimony presented at the evidentiary hearing made it
clear to the Court that Amphastar could not have
independently made the conclusions it purported to
have made regarding Example 6.  In fact, the Court
found that <u>there was no evidence that Zhang made the
stated conclusion since he never recorded it nor
shared it with anyone</u>.  Amphastar's theory that Zhang
formed such an opinion never came to light during
preceding litigation or in the instant litigation
until after the original source issue was raised by
Aventis.

Moreover, the manner in which Amphastar and its counsel
proceeded provides further indication of the absence of any
reasonable basis for its contention that it was an "original
source."  As reflected in the Superseding Decision Re:
Jurisdiction [ECF No. 380], the behavior of Amphastar's counsel
in regard to the hearing was questionable.  He knew, but did not
disclose, that hearing exhibits were incomplete copies of
original documents and that he had complete original documents
of which incomplete copies were in evidence.  Moreover, his
arguments to the Court were so specious as to manifest a lack of
proper professional concern for integrity.  For example, the
very pre-filing disclosure letter sent to the Government by Jan
Weir, Esquire, its counsel in the instant case, stated, in
pertinent part:

> We write to inform you that Amphastar plans
> on bringing an action as a qui tam relator
> on behalf of both the United States
> government and various state governments
> under the federal False Claims Act ("FCA")
> and the respective state False Claims Acts
> against Aventis Pharmaceuticals, Inc.
> ("Aventis" or "Defendant").  During
> Amphastar's litigation against Aventis,
> Amphastar discovered that Aventis has
> committed frauds against both the United
> States Patent & Trademark office and the
> United States Food & Drug Administration,
> which have resulted in false claims for
> overpayment from the government, including
> Medicare and Medicaid.

Ltr. 1, Dec. 31, 2008, ECF No. 186-1.

17

To avoid the effect of his admission regarding the source of the basis for the qui tam claim, he tried to deny that he was referring to a discovery during the Infringement Suit.

> MR. WEIR:
>
> And, finally, with respect to the letter that I wrote, we said during litigation, I didn't say from discovery. It just was during litigation. And I don't believe I was saying something that cut it off and narrowed it. It was just a reference that during litigation this is what we came up with. I don't think I was limiting it to any particular time.

Hr'g Tr., Closing, 157:19-25.

He then stated that when he said "during litigation," he was not referring to the time that the litigation was pending.

> THE COURT:  You said discovered during litigation.
>
> MR. WEIR:  During this litigation we discovered, I didn't say we discovered from Aventis, I didn't say -- it was just a --
>
> THE COURT:  Where did you discover it from in the litigation other than from Aventis?
>
> MR. WEIR:  The -- as I said --
>
> THE COURT:  Was that after the litigation started is when you did the experiments? You were finished with those.
>
> MR. WEIR:  I think that litigation entails a pre-suit investigation, it includes the ANDA letters, the ANDA filing. It included broadly, the effort to invalidate the patent or to --

Hr'g Tr., Closing, 158:1-13.

18

In the Decision Re: Conduct Of Counsel [ECF No. 535], the
Court found that Amphastar's counsel, Mr. Weir, did not act
properly in regard to the evidentiary hearing, but in view of
the then-pertinent clear and convincing evidence standard, did
not exercise its discretion to impose sanctions on him.

Amphastar argues that it had a strong basis for asserting
that there had been no public disclosure, because the
Infringement Suit included no allegations of false claims
submitted to or paid by the government.  Neither the Ninth
Circuit, in its appellate decision, nor this Court finds
Amphastar's argument persuasive.  In United States ex rel.
Found. Aiding the Elderly v. Horizon West, 265 F.3d 1011 (9th
Cir. 2001), the decision Amphastar relies upon, the Ninth
Circuit specifically adopted the analysis and reasoning of the
District of Columbia Circuit in United States ex rel.
Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654-55 (D.C.
Cir. 1994), which held that the public disclosure bar is
triggered if the true state of facts and the mispresented state
of facts are both disclosed.  "The evidence that the
misrepresented facts and the true facts were actually disclosed
is overwhelming." Amphastar Appeal, 856 F.3d at 705.

The Court is mindful that it must "resist the
understandable temptation to engage in post hoc reasoning by

concluding that, because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christiansburg, 434 U.S. at 421-22.  The Court does not find Amphastar's claim frivolous because it did not prevail, but rather because, as the facts became known to the Court, it became clear that Amphastar had no reasonable foundation on which to bring the suit.  The theory of the case may have been novel, but the Government may have decided to pursue it. However, after the Government declined to proceed, prior to Amphastar's decision to pursue the suit, Amphastar knew or should have known that the Court would not have jurisdiction. Deciding to pursue a lawsuit without a credible foundation from the onset for doing so is clearly frivolous.

Accordingly, the Court finds that Amphastar's claim was clearly frivolous.


C.   Improper Purpose

Aventis contends that Amphastar's case was also "clearly vexatious" or "brought primarily" for an improper purpose (such as to harass a competitor).  Aventis asserts that Amphastar has been excessive in its efforts to capitalize on Aventis' Example 6 error – an error that Aventis itself had disclosed to the USPTO resulting in the patent being reissued without Example 6.

20

Further, Aventis points to misconduct by Amphastar and its
counsel over the course of the entire litigation, and
specifically during the evidentiary hearing.

The fact that Amphastar's claim in this case is a
continuation in a series of claims that Amphastar has lodged
against Aventis over more than a decade may not be enough, in
itself, to render the claim clearly vexatious or harassing.
However, the fee-shifting provision was designed to protect
against abusive FCA claims.  See S. Rep. No. 99-345, at *29
(1986), reprinted in 1986 U.S.C.C.A.C. 5266, 5294 ("The
Committee added this language in order to create a strong
disincentive and send a clear message to those who might
consider using the private enforcement provision of this Act for
illegitimate purposes. The Committee encourages courts to
strictly apply this provision in frivolous or harassment suits
as well as any applicable sanctions available under the Federal
Rules of Civil Procedure.").

Although the Court declined to impose sanctions against
either Amphastar or its counsel related to the conduct during
the course of the evidentiary hearing, the Court did find that
counsel had acted improperly.  The Court determined that there
was not clear and convincing evidence of intentional bad faith
by Amphastar's counsel. See Decision Re: Conduct of Counsel, ECF

21

No. 535.  However, the FCA attorneys' fees provision does not
require a finding of subjective bad faith.  See, e.g.,
Christiansburg, 434 U.S. at 421 ("[T]he term 'vexatious' in no
way implies that the plaintiff's subjective bad faith is a
necessary prerequisite to a fee award . . . .").

Upon reviewing the entire course of the litigation, the
Court notes multiple discovery issues, improper conduct,
incredible testimony, and a baseless claim with no supporting
evidence.  As a result, both Aventis and the Court have devoted
countless hours and resources to bring this litigation to
resolution.  These findings lend weight to an award of
attorneys' fees, even though an award is not mandatory upon a
finding of frivolousness.

Accordingly, the Court shall exercise its discretion and
award Aventis its reasonable fees from the time of the unsealing
of the Complaint to the final disposition.


III. CONCLUSION

For the foregoing reasons:

1.   Aventis's Application For Entitlement to Fees and
     Expenses Under 31 U.S.C. § 3730(d)(4) [ECF No.
     519-1] is GRANTED.

2.   Plaintiff-Relator, Amphastar Pharmaceuticals Inc.
     shall pay Defendants their reasonable attorneys'
     fees and expenses from the date the Complaint was
     unsealed to the final disposition of this case.

22

3.     The Court shall, by separate Order, refer the matter to a Magistrate Judge to conduct such proceedings as may be necessary and provide a report and recommendation regarding the amount of the award to be made.


SO ORDERED, on <u>Monday, November 20, 2017</u>.



_____/s/_____
Marvin J. Garbis
United States District Judge